## BUDGE v. BARRON.

No. 3099. Decided December 14, 1917. (169 Pac. 745.)

VENDOR AND PURCHASER—CONTRACT FOR PURCHASE—SURRENDER OF INTEREST. Defendant effectually surrendered and divested himself of his interest under his contract for purchase of land, where, being in default in interest thereon, entitling the vendor to invoke its forfeiture clause, plaintiff agreed to take it off his hands, reimbursing him for his payments thereon, if the vendor would agree to eliminate a building restriction clause, and defendant reported this to the vendor, and got it to issue a contract therefor to plaintiff; writing not being necessary for surrender of the interest.[1]

Appeal from District Court of Cache County, First District; *Hon. J. A. Howell,* Judge.

Action by T. B. Budge against Ashmer Cecil Barron.

Judgment for plaintiff. Defendant appeals.

AFFIRMED.

*George Q. Rich* for appellant.

*Nebeker, Thatcher & Bowen* for respondent.

---

[1] *Aaron* v. *Holmes,* 35 Utah 49, 99 Pac. 450; *Cutwright* v. *Savings & Investment Co.,* 33 Utah 487, 94 Pac. 984, 14 Ann. Cas. 725.

## APPELLANT'S POINTS

Subjecting the facts in this case to the test of mutuality, that is, as to whether in this triangular matter each of the parties might legally be held to a performance, we at once see that there would be nothing to bind either the Trustee or the respondent and therefore there could be no estoppel as against this appellant because he did not carry through the proposed deal. An estoppel must be mutual, it must bind both parties, and one who is not bound by it cannot take advantage of it. *(Durkee* v. *People,* 46 Am. St. Rep. 340; *First Nt. Bk.* v. *Northw. Nat. Bk.,* 43 Am. St. Rep 247, 16 Cyc. page 715.) Equitable estoppel in so far as it relates to the trial of title to land, is defined to be that doctrine by which a party is prevented from setting up his legal title, because he has, through his acts, words or silence, led another to take a position in which the assertion of the legal title would be contrary to equity and good conscience. *(Terrel* v. *Weymouth,* 37 Am. St. Rep. 98.) Estoppels are protective only, and are to be invoked as shields, and not as offensive weapons. Their operation should in all cases be limited to saving harmless or making whole the person in whose favor they arise, and they should never be made the instruments of *gain or profit.* *(Lindsay* v. *Cooper,* 33 Am. St. Rep. 105.) The representation must be *plain* and *certain,* and ordinarily in reference to past or present facts only, not matters of law or opinion. (Am. and Eng. Encyc. of Law, [1st Edit.] Vol. 7, p. 13-14.)

CORFMAN, J.

This is an action brought by the plaintiff to determine his right, as against the defendant, in certain real property situate in Logan City, Utah.

It appears that on or about the 25th day of February, 1916, the defendant entered into a written contract with Joseph F. Smith, trustee in trust for the Church of Jesus Christ of Latter Day Saints, whereby and under the terms of which the said Joseph F. Smith, as said trustee, agreed to sell, and the defendant agreed to buy, lot 21, Temple View addition, as

shown on the official plat of said lands of record in the office of the county recorder of Cache County, Utah, being a part of block 3, plat C of Logan City survey; that by the terms of said contract the purchase price of said lot was fixed at $1,000, of which $100 was paid by the defendant upon entering into the contract, the balance, $900, to be paid on or before five years from date of contract, with interest thereon at the rate of 7 per cent. per annum, payable quarterly. Among other things, said contract contained the condition, binding upon the grantee's heirs, executors, administrators, and assigns, "that said premises shall be used for residence purposes only," and "that no building shall be erected thereon costing less than $3,000." Said contract also contained a forfeiture clause in the following language, to wit.

"It is understood and agreed that time is and shall be of the essence of this contract, and that in case the said party of the second part shall fail to promptly make any or either of the said payments of principal or interest within sixty days after the maturity thereof, or to comply strictly with either or any of the terms of this contract, then the said party of the first part shall have the right to terminate this contract, and to retain all payments made hereunder by the party of the second part as liquidated damages unless the party of the first part, his successors in office, or assigns shall otherwise elect."

The contract was made in duplicate, each party retaining one, and contemporaneous with the contract the defendant made and delivered his promissory note to C. W. Nibley, agent for Joseph F. Smith, trustee for $900, payable with interest according to the terms of said contract. The duplicate of the contract and the note, after delivery, were held and retained at the general office of the Church of Jesus Christ of Latter Day Saints, at Salt Lake City, pending performance and payment on the part of the defendant, until on or about the time of the transactions involved herein between the plaintiff and the defendant hereinafter mentioned and set forth.

The negotiations with the defendant leading up to the sale of the city lot and the execution of the contract and promissory note, on behalf of Joseph F. Smith, trustee, were con-

ducted by one Serge F. Ballif, who was the agent of the said trustee at Logan, Utah, and also the stake president of said church for Cache Stake, a branch or subordinate body of the main church.

The plaintiff in the action owned a lot south of and immediately adjoining lot 21, contracted for by defendant, and on the 28th day of July, 1916, was engaged in building a residence thereon. On said day the defendant approached the plaintiff and advised him that he was planning to go to Idaho and take charge of his father's farm, and that he would like to dispose of his interests in lot 21. Plaintiff became interested, and informed the defendant that he would purchase lot 21 provided the restrictions in defendant's contract requiring said lot to be used for residence purposes alone could be eliminated, and the restrictions so qualified as to permit a rock barn situated thereon to be used for a garage or the purposes originally intended. Thereupon the defendant advised the plaintiff that he thought the restrictions in the contract could be removed as desired by the plaintiff, and the plaintiff advised the defendant that, if that could be done, he could feel pretty sure that he, the plaintiff, would purchase the lot. The defendant on the same day called on Ballif and informed him that he contemplated going to Idaho and would like to be relieved of his contract to purchase lot 21, and that the plaintiff would buy his interest therein provided the restrictions in the contract could be modified as desired by the plaintiff. Thereupon Ballif advised him that it would be all right, and he would do what he could for him. The defendant then reported back to the plaintiff that he thought the restrictions in the contract could be modified, in which case it was agreed that the plaintiff should pay the defendant the $100 initial payment made by defendant on his contract, and the then accrued interest, $15.75, on his note, and assume the balance, $900, of the purchase price of said lot 21, so that defendant could have his note canceled and his contract to purchase terminated. On the following day, July 29, 1916, the defendant again called on Ballif, and in the presence and hearing of

the defendant the following letter was dictated and forwarded by mail to the general office of the trustee at Salt Lake City:

"Office of Cache Stake Presidency,
                "Logan, Utah, July 29, 1916.
"Bp. C. W. Nibley and Couns., Salt Lake City, Utah— Dear Brethren: Will you please return the contract made by A. C. Barron for lot No. 21, Temple View addition. This contract has been transferred to Dr. T. B. Budge, and it will be necessary to make a new contract. Please forward these papers and I shall execute the contract.
        "Your brother,            Serge F. Ballif,
                            "Stake President."

After the foregoing letter had been dictated the defendant again called on the same day, July 29th, upon the plaintiff, and advised him that Mr. Ballif had written the letter, and it was then discussed between the plaintiff and defendant as to the method that should be adopted by the plaintiff in taking over the interests of the defendant in the property, and as to the advisability of making a new contract with the trustee with the desired modifications of the restrictions in the use of the property. During this conversation the defendant turned over to the plaintiff the contract he had theretofore entered into with the trustee. This was on Saturday. On the following Monday, July 31, 1916, the defendant had changed his mind about disposing of his interest in said lot, and from thenceforth, as the record shows, proceeded to make the claim that he had not, by what had theretofore transpired between himself, the plaintiff, and Ballif, as agent for the trustee, divested himself of his interest in said lot 21 under his contract with the trustee for the purchase of the same.

The plaintiff, after the conversations had with the defendant on the 29th of July, and while holding the duplicate contract of the defendant, proceeded to enter into possession of lot 21, and on Sunday, July 30th, had the barn situated thereon wired with electric wires, and has ever since claimed to be the rightful owner of said lot 21 subject to a contract to purchase of the trustee, bearing date August 1, 1916.

The record further discloses that subsequent to July 31, 1916, when the defendant had changed his mind regarding the disposal of his interest in said lot 21, he gave notice that he would continue to claim his interest under his said contract to purchase the lot; that he made remittance of the delinquent interest to the general office of the trustee in Salt Lake City, and proceeded to exercise property rights over the premises by expending labor and material in the remodeling of the barn situated thereon for use as a family residence until restrained and enjoined from so doing by the order and decree of the trial court in this action.

The plaintiff, in his complaint, in substance, pleads the entering into of the contract by the defendant on the 25th day of February, 1916, to purchase lot 21 of Joseph F. Smith, trustee; the default of the defendant in making interest payments thereunder; in effect, an abandonment by the defendant of said contract; a tender of payment to the defendant of the amount theretofore advanced or paid by him under the terms of the contract; the subsequent cancellation of defendant's contract and note for the ballance owing by him on the purchase price of said lot; and the entering into of a new agreement by plaintiff with the trustee for the purchase thereof on August 1, 1916.

Plaintiff prayed injunctive relief, and that his right and title to the premises be quieted as against the defendant.

The answer, in substance, admits the allegations of the complaint with the exception of ownership of the premises by the plaintiff, which is denied; affirmatively alleges ownership in the defendant under his contract to purchase of the trustee; and pleads in bar to plaintiff's cause of action the provisions of sections 1974, 2461, 2463, Comp. Laws Utah 1907. The reply of the plaintiff is, in effect, a general denial of the affirmative allegations of the answer.

Upon trial to the court without a jury the issues were found in favor of the plaintiff. Motion for a new trial was denied. The defendant appeals.

Numerous errors are assigned by the defendant, principally as to the rulings of the trial court in the admission and rejec-

tion of testimony on the trial, and to the court's findings of fact and conclusions of law.

As we view the record, and after careful consideration of the contentions made by the respective parties, the main question involved, and the one that must necessarily control, and is now before the court for determination on appeal, is whether or not the acts and conduct of the defendant were such as to divest him of the interest it is conceded he acquired under the written contract entered into by him with Joseph F. Smith, trustee, on the 25th day of February, 1916, for the purchase of the real property now the subject of this controversy.

The material findings of the trial court complained of by defendant bearing on the question involved, after stating in substance the terms and conditions of the contract of February 25, 1916, including the forfeiture clause, are as follows:

"That on the 28th day of July, 1916, the defendant, being then more than 60 days in default in the payment of the interest due pursuant to the terms of his said contract, called at the office of the plaintiff in the city of Logan and stated and represented to the plaintiff that he, the defendant, desired to remove to the state of Idaho to engage in the business of farming, and requested the plaintiff to relieve him, the defendant, from said contract to purchase said property, by taking over said contract and assuming the obligation to pay the purchase price thereunder; that plaintiff replied that he would purchase said property, provided the defendant would secure the consent of the owner thereof to a modification of the contract of purchase by the elimination of the said conditions contained therein with respect to the use of said premises for residence purposes and with respect to the cost of any building erected thereon, in which event plaintiff would agree to take the defendant's place as the purchaser of said property, and would pay to Serge F. Ballif, the agent of the owner thereof and the person through whom the contract with the defendant had been consummated, for the defendant's benefit, the $100 which defendant had paid under his said contract; that defendant then and there agreed with plaintiff to have a new

contract prepared by Ballif eliminating said conditions and substituting plaintiff as purchaser.

"That the defendant thereupon called upon said Serge F. Ballif and represented to said Ballif that he desired to be relieved from said contract, and that plaintiff had agreed to purchase said property in the place and stead of the defendant, if the said conditions with respect to the use of said property and with respect to the cost of any building erected thereon could be eliminated; that said Ballif, acting for said Joseph F. Smith, trustee, the owner of said property, agreed to the elimination of said conditions, and thereupon defendant requested said Ballif to take such steps as might be necessary to substitute the plaintiff for him, the said defendant, as purchaser of said property; that said Ballif thereupon stated to defendant that he would make a new contract with the plaintiff for the purchase of said property, and that he would procure from his principal at Salt Lake City the cancellation of defendant's said contract and return said contract to said defendant, and said Ballif did then and there, in the presence of defendant, dictate a letter to one C. W. Nibley, of Salt Lake City, the agent of said Joseph F. Smith, trustee in trust, and with whom defendant's said contract had been deposited requesting the return of defendant's said contract and advising that a new contract for the purchase of said property by the plaintiff had been agreed upon and would be entered into in the place and stead of said contract with said defendant, and that defendant then and there gave his approval and consent to said letter as dictated.

"That thereafter, to wit, on the 29th day of July, 1916, defendant, who had in his possession a copy of his said contract with the said Joseph F. Smith, trustee, delivered up and surrendered the same to the plaintiff, and the plaintiff, on the day following, to wit, July 30, 1916, went into possession of said property and installed in the building hereinafter refered to the necessary electric wiring, in order that said building might be furnished with light.

"That on the 1st day of August, 1916, pursuant to the agreement and understanding had with said defendant and

the said Ballif, the plaintiff entered into a written contract with said Joseph F. Smith, trustee, whereby and by the terms whereof said Joseph F. Smith, trustee, agreed to sell and the plaintiff agreed to buy the said property hereinbefore described for the sum of $1,000, $100 of which was on said date paid to said Ballif, the same to be paid over by said Ballif to said defendant to reimburse him for the amount paid by said defendant on his said contract for said property, and by the terms of the plaintiff's said contract the balance of said purchase price is to be paid on or before five years, with interest at the rate of 7 per cent. per annum, payable quarterly; that the conditions with respect to the use of said property for residence purposes and as to the cost of any building erected thereupon, which were contained in the contract between the said Joseph F. Smith, trustee, and the defendant, were omitted from the plaintiff's said contract, and in lieu thereof the plaintiff's contract contained the following provisions: 'That said premises shall be used for residence purposes, garage, or for the purpose for which the building now standing on it was intended.' And by the terms of said contract plaintiff is granted immediate possession of said premises, in consideration of the payment of all taxes and assessments legally levied thereon.

"That on or about the 3d day of August, 1916, notwithstanding his agreement with the plaintiff, and notwithstanding he had abandoned and surrendered his said contract with said Joseph F. Smith, trustee, dated February 25, 1916, and notwithstanding plaintiff, pursuant to defendant's request, by his contract of August 1, 1916, had been substituted for the defendant as the purchaser of said property, and notwithstanding the protests and objections of the plaintiff, defendant went upon the above-described property and commenced the work of remodeling said barn to make the same suitable for residence purposes, and on said date transmitted to Bishop C. W. Nibley at Salt Lake City the sum of $15.75, in the payment of which the said defendant had been and was in default at the time of his agreement with the plaintiff herein on the 28th day of July, 1916, and at the time of his abandonment of his said con-

tract on the 29th day of July, 1916; that said amount so transmitted to said C. W. Nibley was by one of his clerks credited to said defendant merely as a clerical act and without any knowledge on the part of said clerk of the dealings between the plaintiff and defendant, the said credit being entered by reason of the fact that defendant appeared on the books by said clerk as one with whom a contract had been entered into, and by reason of the further fact that defendant's check was received in the mail with other remittances in the usual course of business, and not otherwise.

"That on or about the 8th day of August, 1916, said Serge F. Ballif tendered to the defendant his said contract of February 25, 1916, duly canceled, together with his check for $100, and prior to the commencement of this action made due tender to defendant of all moneys, both principal and interest, paid by the defendant to said Ballif or to said Joseph F. Smith, trustee, both of which tenders were by the defendant refused."

As conclusions of law from the foregoing facts the court found:

"That by his conduct the defendant abandoned his contract of February 25, 1916, and surrendered all his rights thereunder."

We have read the entire record of the testimony given at the trial, and while at times the evidence may be conflicting, yet in our judgment the great weight of the testimony is in full accord with the foregoing findings of the trial court. Indeed, the plaintiff's own testimony affords quite conclusive proof that he authorized the making of the contract of sale on the part of the owner of the property with the plaintiff, under which plaintiff now claims. We quote defendant's testimony in that regard:

"Q. And the necessary arrangements which you were to make were that a new contract was to be gotten up and the restrictions removed? A. Yes, sir. Q. And then you would go through with it? A. Yes, sir. Q. And you agreed to that at that time? A. To what? Q. To what I have just stated? A. May I have it read over again please? (Question read.)

A. No. Q. You agreed to that you say? A. He said that he would— Q. Just answer the question; I ask you if you agreed to it? A. He said that he would pay me what it had cost me, and I said 'Yes,' I would agree to it. Q. After he had told you he would pay you what it had cost you, he told you did he not that it would be better to have a new contract? A. I just stated that he said that it would be better for me to get up a new contract with the restrictions eliminated, and if such was the case, he would pay me what it had cost me. Q. And you said that was all right? A. I don't know that I did. Q. Well you agreed to it? A. I didn't say I wouldn't. Q. Can you answer my question, Mr. Witness? A. I don't remember what I said, but I didn't object to that. Q. Well then it was agreeable to you? A. Yes, sir. The Court: You didn't say 'Yes' to that, then? A. This last? Q. Yes. A. Didn't I state that I did? Q. You didn't say anything, but a little while before I understood you to say, 'Yes, I agreed to that.' What did you understand you agreed to? A. I understood that I agreed to dispose of my interest to Mr. Budge providing— he asked me to get up a contract with the restrictions eliminated, and then he would pay me what it had cost me. Q. Now, is that what you understood you were agreeing to? A. Yes, sir. The Court: I see, all right."

In keeping with the foregoing testimony of the defendant the record shows that Ballif, the agent of the owner of the property, at the request of the defendant, addressed the letter of July 29, 1916, to the general office of the trustee in Salt Lake City, asking the return of the defendant's contract, advising that defendant's interest had been transferred to the plaintiff, that it would be necessary to execute a new contract directing a return of the defendant's papers, and that he (Ballif) would execute a new contract. The record further shows that Ballif, as agent for the owner, did, on the morning of July 31st following, execute and deliver a new contract for the purchase of the premises by the plaintiff, and on the same day delivered it to the plaintiff, and that the plaintiff has since claimed under it the interest in the property here contended for by him. The intent and purpose of the defendant to

abandon his contract to purchase the premises of the owner, his authorization of a sale, and the entering into of a new contract between the owner and the plaintiff was made manifest by his acts and conduct up to this time. Moreover, in view of the fact that defendant had long since defaulted in his interest payment, the owner of the property had the independent right to invoke the forfeiture clause of the defendant's contract, especially, we think, after appealing to the owner, as he did in furtherance of his own interest, to have the plaintiff substituted as a purchaser of the premises. That the defendant subsequently changed his mind and altered his purposes, as a matter of law, was of no consequence. Nor may he now successfully contend that his interests in the property in question were not effectively surrendered by reason of his not having surrendered them by deed or conveyance in writing in compliance with the statutes. *Aaron* v. *Holmes,* 35 Utah, 49, 99 Pac. 450; *Cutwright* v. *Savings & Invest. Co.,* 33 Utah, 487, 94 Pac. 984, 14 Ann. Cas. 725; *Telford* v. *Frost,* 76 Wis. 172, 44 N. W. 835.

In the case of *Cutwright* v. *Savings & Invest. Co.,* supra, the questions involved were so analogous to those of the case at bar that it becomes unnecessary to say more than that the principles of law there announced and applied were adhered to by the district court in the trial of this action, and that no prejudicial error is disclosed by the record.

It is therefore ordered that the judgment of the district court be affirmed; plaintiff to recover costs.

FRICK, C. J., and McCARTY, THURMAN, and GIDEON, JJ., concur.