John D. WARNER, aka John D. Warner and Leora Larene Warner, his wife, Plaintiffs and Appellants,

v.

Robert J. RASMUSSEN and Kathy Lee Rasmussen, his wife, Defendant and Respondents.

No. 19079.

Supreme Court of Utah.

Aug. 2, 1985.

---

**12.** *Id.* at 1326.

**13.** *See also State v. Royball,* Utah, 689 P.2d 1338, 1340 (1984).

George M. McCune, Salt Lake City, for plaintiffs and appellants.

Gary L. Chrystler, Provo, for defendants and respondents.

HALL, Chief Justice:

The Warners (buyers), defaulting buyers under a uniform real estate contract, appeal a judgment dismissing their action to recover a portion of their payments on the contract which the Rasmussens (sellers) retained under a forfeiture clause. Buyers challenge both the legal and factual bases of the trial court's determination of actual damages caused by buyers' breach. They contend the amount they paid on the contract was far greater than sellers' actual damages and thus the forfeiture clause is unconscionable and voidable as a penalty. We affirm.

The parties entered the uniform real estate contract at issue here in August 1979. Under the contract, buyers agreed to buy a house in Orem, Utah, for $57,000, with $2,850 down and the balance at 10 ½%

interest in monthly installments of $533 for two years, after which a balloon payment was due. The contract also provided that, upon buyers' default, sellers could repossess the property and retain all payments previously made as liquidated damages.

Buyers lived in the house until July 31, 1981, when, having failed to make three monthly payments and unable to make the balloon payment, they voluntarily returned the property to sellers. Pursuant to the forfeiture clause, the sellers kept all of the payments made, a total of $13,994.25. Fifty-one days later, sellers rented the house with an option to buy to Ronald M. Spears for $450 per month, $100 of which was to be applied toward the purchase price of $56,000 upon exercise of the option. Mr. Rasmussen testified that no effort to rent or resell the house had been made until seven to ten days before it was actually rented to Spears and that, on the advice of their attorney, sellers had allowed the house to remain vacant after buyers moved out.

The above facts were undisputed at trial. However, there was a conflict in the evidence as to the fair market value of the property when buyers surrendered possession. Buyers adduced evidence to show they made some improvements to the house, including painting, wallpapering, partial installation of an additional bathroom, and conversion of part of an existing family room to a bedroom. The cost of the improvements, according to Mr. Warner, was $1,500. One expert real estate appraiser testified that the extra bedroom added $1,500 in value to the house. According to the testimony of another expert real estate appraiser called by buyers, however, the bedroom added nothing to the value of the house because it did not increase the finished floor space. Sellers' testimony was that the improvements were only to suit individual preference and that some were poorly built.

According to Mr. Warner, the value of the house when buyers vacated it was $60,000. One appraiser testified that the property was worth from $57,500 to $59,700, depending on the method of valuation used. Another appraiser estimated that the property was worth up to the amount of the original purchase price. The trial court found that the value of the property had not changed appreciably during buyers' occupancy and that buyers were not entitled to credit for improvements.

The trial court determined sellers' actual damages to be $11,169, consisting of $10,575 in interest accrued under the contract during buyers' occupancy and $594 in lost rent at $350 per month fair rental value for the period in which the house was vacant after buyers moved out. In addition, the court found that sellers' attorney fees in defending this action and expenses of reselling the house, including a realtor's commission of over $2,500, were "real but undeterminable additional damages which have a reasonable probability of occurring." The court found the liquidated damages clause was not unconscionable and, accordingly, dismissed buyers' action with prejudice.

Under the basic principle of freedom of contract, a stipulation to liquidated damages for breach of contract is generally enforceable.[1] Where, however, the amount of liquidated damages bears no reasonable relationship to the actual damage[2] or is so grossly excessive as to be entirely disproportionate to any possible loss that might have been contemplated that it shocks the conscience,[3] the stipulation will not be enforced.

Buyers' primary contention is that the trial court erred in determining the dam-

1. *Perkins v. Spencer,* 121 Utah 468, 474, 243 P.2d 446, 449 (1952). *See also Biesinger v. Behunin,* Utah, 584 P.2d 801, 803 (1978); *Jensen v. Nielsen,* 26 Utah 2d 96, 98, 485 P.2d 673, 674–75 (1971).

2. *Soffe v. Ridd,* Utah, 659 P.2d 1082, 1084 (1983); *Perkins v. Spencer, supra* note 1, at 475, 243 P.2d at 450.

3. *Soffe v. Ridd, supra* note 2, at 1084; *Jacobson v. Swan,* 3 Utah 2d 59, 65, 278 P.2d 294, 298 (1954).

ages attributable to loss of use of the property during buyers' occupancy by using the interest accrued under the contract for that period. Relying on language from this Court's opinion in *Perkins v. Spencer*,[4] buyers contend fair rental value is the only proper measure of such damages. Based on trial testimony of Mr. Warner and two expert real estate appraisers that the fair rental value of the property was $325 when buyers moved in and $350 when they vacated the property, buyers argue that sellers' damages from loss of use of the property during buyers' occupancy are $7,931.25 ($337.50 for 23 ½ months).

In *Perkins v. Spencer*, we held that where defaulting buyers under a uniform real estate contract had made a down payment of over 25% of the purchase price plus monthly payments during their occupancy equal to "the reasonable rental value of the property" and where there was no evidence of a decline in the market value of the property or loss of an advantageous bargain, the forfeiture of all of the buyers' payments under a liquidated damages clause was a penalty. Reversing the trial court, we held the clause unenforceable and remanded the case for a determination of sellers' actual damages as measured by: "(1) Loss of an advantageous bargain; (2) Any damage to or depreciation of the property; (3) Any decline in value due to change in market value of the property not allowed for in items nos. 1 & 2; and (4) For the fair rental value of the property during the period of occupancy."[5]

■ This Court has previously addressed the contention that *Perkins* precluded alternative methods of calculating actual damages from breach of a land sales contract. In *Johnson v. Carmen*,[6] we upheld a ruling that a forfeiture clause in a uniform real estate contract was unenforceable where a portion of the sellers' actual damages was measured by interest at the contract rate of 8 ½% per annum on the unpaid balance of the contract.[7] Our response there applies equally here: "Although [the factors set forth in *Perkins*] are reasonable factors to determine damages, they were not meant to be a rigid formula to be applied mechanically in every case. In determining equitable damages, the trial court may use whatever factors it finds most appropriate to achieve justice."[8]

■ Moreover, as we noted in *Biesinger v. Behunin*,[9] "[f]air rental value necessarily represents a reasonable return (interest) on investment." The interest and rental value of the property are merely alternative methods of measuring the same thing, *i.e.*, the value of the use of the property during the period of buyers' occupancy. Where the evidence yields differing amounts for the two values, the trier of fact has the duty to weigh the evidence in support of each and choose accordingly, just as it must choose among conflicting evidence on any other factual issue.

■ Buyers further argue that, even if interest value were an appropriate measure of sellers' damages from loss of use of the property, the rate of return must be "reasonable," and it is improper to determine interest value based on the contract interest rate. To be sure, the goal in awarding the sellers damages for loss of use of the property is to grant a reasonable return on investment. In many cases, however, the parties' contract itself will be the most persuasive evidence on this issue. Such was the case here. Nothing in the record shows that the 10 ½% contract interest rate would yield any more than a reasonable return on investment. Thus, the

---

4. *Supra* note 1.

5. *Perkins* 121 Utah at 478–79, 243 P.2d at 451–52.

6. Utah, 572 P.2d 371 (1977).

7. *See also Fullmer v. Blood*, Utah, 546 P.2d 606, 609–10 (1976) (judgment enforcing forfeiture clause in uniform real estate contract upheld where buyers had paid $12,150 on contract and where "interest at 6 percent on the purchase price during [the period of buyers' possession] would amount to over $11,000").

8. *Johnson, supra* note 6, at 374.

9. *Supra* note 1, at 803.

trial court's determination of damages from loss of use of the property during buyers' occupancy is well grounded in both law and fact.

■ Buyers next challenge the trial court's determination that they were not entitled to credit for improvements and that the fair market value of the property had not appreciably changed during buyers' occupancy. These assertions of error are not well taken. The often stated rule is that we will not overturn a trial court's factual determinations if they are supported by substantial evidence.[10] Here, buyers' own expert witness, a real estate appraiser, testified that the alleged improvements added nothing to the value of the home and that the fair market value of the home was the same when buyers surrendered it as when they moved in. While there was conflicting evidence on these issues, there was clearly substantial evidence to support the findings.

■ Buyers also complain that the trial court improperly included in the damages rent for the period in which the house was vacant after buyers moved out. We agree. As noted above, Mr. Rasmussen testified that the property was intentionally allowed to remain vacant until several days before it was rented to Spears. In light of this admitted failure to make any effort to mitigate damages during the period the house was vacant, the award of rent for this period was error.

■ Nevertheless, the amount forfeited, $13,994.25, is not unconscionable in comparison to the actual damages of $10,575, excluding the award for rent. As we stated in *Jacobson v. Swan:*[11]

> The parties have a right to [contract for liquidated damages] and such right should not be lightly interfered with. It is only when the forfeiture would be so grossly excessive as to be entirely disproportionate to any possible loss that might have been contemplated, so that to enforce it would shock the conscience, that a court of equity will refuse to enforce the provision.[12]

Here, the excess of the forfeiture over the actual damages is under $3,420—about 6% of the sales price. This amount does not rise to the level of unconscionability as defined in our previous cases.

Buyers further contend that an award of attorney fees for sellers' defense of this action and a real estate commission for resale of the property after buyers' default are inappropriate items to include in the actual damages. Although the trial court mentioned these items in its findings and memorandum decision, it did not include them in the calculation of sellers' damages. Therefore, we shall not address these issues on appeal.

Finally, buyers contend they were prejudiced by the court's failure to follow its own pretrial order specifying that sellers' actual damages would be determined according to the elements prescribed in *Perkins v. Spencer*[13] which did not include interest value of the property. Buyers' contention is without merit. First, we note that the record on appeal contains a pretrial order that was never signed by the court. Second, even if we were to deem the court to have adopted this proposed order, it is not inconsistent with the law followed by the court. The proposed order merely calls for adherence to "[t]he principles of *Perkins v. Spencer* and subsequent cases interpreting the same." Thus, we decline to address here whether the court was in any respect bound by its pretrial order.

Affirmed.

STEWART, HOWE, DURHAM and ZIMMERMAN, JJ., concur.

---

10. *See, e.g., Bennion v. Hansen,* Utah, 699 P.2d 757 (1985); *Kinkella v. Baugh,* Utah, 660 P.2d 233, 235 (1983); *Kohler v. Garden City,* Utah, 639 P.2d 162, 165 (1981).

11. *Supra* note 3.

12. 3 Utah 2d at 65; 278 P.2d at 298; *see also Soffe, supra* note 2, at 1085–86 (Oaks, J., concurring).

13. *See supra* note 5 and accompanying text.