**L. Lynn ALLEN and Merle Allen, Plaintiffs and Respondents,**

v.

**Thomas M. KINGDON and Joan O. Kingdon, Defendants and Appellants.**

No. 18290.

Supreme Court of Utah.

July 29, 1986.

H. James Clegg, Scott Daniels, Salt Lake City, for defendants and appellants.

Boyd M. Fullmer, Salt Lake City, for plaintiffs and respondents.

HOWE, Justice:

The plaintiffs Allen (buyers) brought this action for the return of all money they had paid on an earnest money agreement to purchase residential real estate. The defendants Kingdon (sellers) appeal the trial court's judgment that the agreement had been rescinded by the parties and that the buyers were entitled to a full refund.

On February 12, 1978, the buyers entered into an earnest money agreement to purchase the sellers' home for $87,500. The agreement provided for an immediate deposit of $1,000, which the buyers paid, to be followed by an additional down payment of $10,000 by March 15, 1978. The buyers were to pay the remainder of the purchase price at the closing which was set on or before April 15, 1978. The agreement provided for the forfeiture of all amounts paid by the buyers as liquidated and agreed damages in the event they failed to complete the purchase. The buyers did not pay the additional $10,000, but paid $9,800 because the parties later agreed on a $200 deduction for a light fixture the sellers were allowed to take from the home. An inscription on the $9,800 check stated all monies paid were "subject to closing."

There were several additional exchanges between the parties after the earnest money agreement was signed. The buyers requested that the sellers fix the patio, which the sellers refused to do. The buyers asked that the sellers paint the front of the home, which Mr. Kingdon agreed to do, but did not accomplish. The parties eventually met to close the sale. The buyers insisted on a $500 deduction from the purchase price because of the sellers' failure to paint. The sellers refused to convey title unless the buyers paid the full purchase price. Because of this impasse, the parties did not close the transaction. Mrs. Allen and Mrs. Kingdon left the meeting, after which Mr. Kingdon orally agreed to refund the $10,800, paid by the buyers. However, three days later, the sellers' attorney sent a letter to the buyers advising them that the sellers would retain enough of the earnest money to cover any damages they would incur in reselling the home. The letter also stated that the buyers could avoid these damages by closing within ten days. The buyers did not offer to close the sale. The home was eventually sold for $89,100, less a commission of $5,346. Claiming damages in excess of $15,000, the sellers retained the entire $10,800 and refused to make any refund to the buyers. The trial court found that the parties had

orally rescinded their agreement and ordered the sellers to return the buyers' payments, less $1,000 on a counterclaim of the sellers, which award is not challenged on this appeal.

The sellers first contend that the trial court erred in holding that our statute of frauds permits oral rescission of a written executory contract for the sale of real property. U.C.A., 1953, § 25–5–1 provides:

> No estate or interest in real property, other than leases for a term not exceeding one year, nor any trust or power over or concerning real property or in any manner relating thereto, shall be created, granted, assigned, *surrendered* or declared otherwise than by operation of law, or by deed or conveyance in writing subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent thereunto authorized by writing.

(Emphasis added.) In *Cutwright v. Union Savings & Investment Co.*, 33 Utah 486, 491–92, 94 P. 984, 985 (1908), this Court interpreted section 25–5–1 as follows:

> No doubt the transfer of any interest in real property, whether equitable or legal, is within the statute of frauds; and no such interest can either be created, transferred, or *surrendered* by parol merely.... No doubt, if a parol agreement to surrender or rescind a contract for the sale of lands is wholly executory, and nothing has been done under it, it is within the statute of frauds, and cannot be enforced any more than any other agreement concerning an interest in real property may be.

(Emphasis added.) In that case, the buyer purchased a home under an installment contract providing for the forfeiture of all amounts paid in the event the buyer defaulted. The buyer moved into the home but soon discontinued payments. He informed the seller that he would make no more payments on the contract, surrendered the key to the house, and vacated the premises. Soon thereafter, an assignee of the buyer's interest informed the seller that he intended to make the payments

under the contract and demanded possession. The seller refused to accept the payments, claiming that the contract had been mutually rescinded on the buyer's surrender of possession.

We held that the statute of frauds generally requires the surrender of legal and equitable interests in land to be in writing. Where, however, an oral rescission has been executed, the statute of frauds may not apply. In *Cutwright*, surrender of possession by the buyer constituted sufficient part performance of the rescission agreement to remove it from the statute of frauds. This exception is one of several recognized by our cases. We have also upheld oral rescission of a contract for the sale of land when the seller, in reliance on the rescission, enters into a new contract to resell the land. *Budge v. Barron*, 51 Utah 234, 244–45, 169 P. 745, 748 (1917). In addition, an oral rescission by the buyer may be enforceable where the seller has breached the written contract. *Thackeray v. Knight*, 57 Utah 21, 27–28, 192 P. 263, 266 (1920).

In the present case, the oral rescission involved the surrender of the buyers' equitable interest in the home under the earnest money agreement. Further, the rescission was wholly executory. There is no evidence of any part performance of the rescission or that the buyers substantially changed their position in reliance on the promise to discharge the contract. On the contrary, three days after the attempted closing, the sellers informed the buyers that they intended to hold them to the contract. It was only after the buyers continued in their refusal to close that the sellers placed the home on the market.

■ The buyers argue that the weight of authority in the United States is to the effect that an executory contract for the sale of land within the statute of frauds may be orally rescinded. This may indeed be the case when there are acts of performance of the oral agreement sufficient to take it out of the statute of frauds. *See* Annot., 42 A.L.R.3d 242, 251 (1972). In support of their contention that an oral

rescission of an earnest money agreement for the purchase of land is valid absent any acts of performance, the buyers rely on *Niernberg v. Feld*, 131 Colo. 508, 283 P.2d 640 (1955). In that case, the Colorado Supreme Court upheld the oral rescission of an executory contract for the sale of land under a statute of frauds which, like Utah's, applies specifically to the surrender of interests in land. The Colorado court concluded that the statute of frauds concerns the making of contracts only and does not apply to their revocation. However, the court did not attempt to reconcile its holding with the contradictory language of the controlling statute. For a contrary result under a similar statute and fact situation, see *Waller v. Lieberman*, 214 Mich. 428, 183 N.W. 235 (1921). In light of the specific language of Utah's statute of frauds and our decision in *Cutwright v. Union Savings & Investment Co.*, *supra*, we decline to follow the Colorado case. We note that the annotator at 42 A.L.R.3d 257 points out that in *Niernberg* the rescission was acted upon in various ways. We hold in the instant case that the wholly executory oral rescission of the earnest money agreement was unenforceable under our statute of frauds.

■ Nor were the buyers entitled to rescind the earnest money agreement because of the sellers' failure to paint the front of the home as promised. *Cf. Thackeray v. Knight*, 57 Utah at 27–28, 192 P. at 266 (buyer's oral rescission of contract for sale of land was valid when seller breached contract). The rule is well settled in Utah that if the original agreement is within the statute of frauds, a subsequent agreement that modifies any of the material parts of the original must also satisfy the statute. *Golden Key Realty, Inc. v. Mantas*, 699 P.2d 730, 732 (Utah 1985). An exception to this general rule has been recognized where a party has changed position by performing an oral modification so that it would be inequitable to permit the other party to found a claim or defense on the original agreement as unmodified. *White v. Fox*, 665 P.2d 1297, 1301 (Utah 1983)

(citing *Bamberger Co. v. Certified Productions, Inc.*, 88 Utah 194, 201, 48 P.2d 489, 492 (1935), *aff'd on rehearing*, 88 Utah 213, 53 P.2d 1153 (1936)). There is no indication that the buyers changed their position in reliance on the sellers' promise to paint the front of the house. Thus, equitable considerations would not preclude the sellers from raising the unmodified contract as a defense to the claim of breach. The fact that the parties executed several other oral modifications of the written contract does not permit the buyers to rescind the contract for breach of an oral promise on which they did not rely to their detriment. We therefore hold that the buyers were not entitled to rescind the earnest money agreement because of the sellers' failure to perform an oral modification required to be in writing under the statute of frauds.

■ The buyers also contend that they are entitled to the return of the $10,800 because the inscription on the $9,800 check stated that all monies were paid "subject to closing." The buyers argue that by conditioning the check in this manner they may, in effect, rewrite the earnest money agreement and relieve themselves of any liability for their own failure to close the sale. We cannot accept this argument. The buyers were under an obligation to pay the monies unconditionally. The sellers' acceptance of the inscribed check cannot be construed as a waiver of their right to retain the $10,800 when the buyers failed to perform the agreement.

Having concluded that the buyers breached their obligation under the earnest money agreement, we must next consider whether the liquidated damages provision of the agreement is enforceable. That provision provided that the sellers could retain all amounts paid by the buyers as liquidated and agreed damages in the event the buyers failed to complete the purchase. The general rules in Utah regarding enforcement of liquidated damages for breach of contract have been summarized as follows:

Under the basic principles of freedom of contract, a stipulation to liquidated damages for breach of contract is generally enforceable. Where, however, the amount of liquidated damages bears no reasonable relationship to the actual damage or is so grossly excessive as to be entirely disproportionate to any possible loss that might have been contemplated that it shocks the conscience, the stipulation will not be enforced.

*Warner v. Rasmussen*, 704 P.2d 559, 561 (Utah 1985) (citations omitted).

■ In support of their contention that the liquidated damages are not excessive compared to actual damages, the sellers assert that they offered evidence of actual damages in excess of $15,000. However, the trial court disagreed and found the amount of liquidated damages excessive. The record indicates that the only recoverable damages sustained by the sellers resulted from the resale of the home at a lower net price amounting to $3,746 (the difference between the contract price of $87,500 and the eventual selling price, less commission, of $83,754). We agree that $10,800 is excessive and disproportionate when compared to the $3,746 loss of bargain suffered by the sellers. Since the buyers did not ever have possession of the property, the other items of damage claimed by the sellers (interest on mortgage, taxes, and utilities) are not recoverable by them. *Perkins v. Spencer*, 121 Utah 468, 243 P.2d 446 (1952). Therefore, the sellers are not entitled to retain the full amount paid, but may offset their actual damages of $3,746 against the buyers' total payments. *See Soffe v. Ridd*, 659 P.2d 1082 (Utah 1983) (seller was entitled to actual damages where liquidated damages provision was held unenforceable).

We reverse the trial court's judgment that the earnest money agreement was rescinded and conclude that the buyers breached their obligation to close the transaction. However, we affirm the judgment below that the liquidated damages provided for were excessive and therefore not recov-

erable. The case is remanded to the trial court to amend the judgment to award the buyers $7,054, less $1,000 awarded by the trial court to the sellers on their counterclaim which is not challenged on this appeal. No interest or attorney fees are awarded to either party inasmuch as the trial court awarded none and neither party has raised the issue on appeal.

HALL, C.J., and STEWART and DURHAM, JJ., concur.

ZIMMERMAN, Justice (concurring):

I join the majority in its disposition of the various issues. However, the majority quotes from *Warner v. Rasmussen*, 704 P.2d 559 (Utah 1985), to the effect that contractual provisions for liquidated damages will be enforced unless "the amount of liquidated damages bears no reasonable relationship to the actual damage or is so grossly excessive as to be entirely disproportionate to any loss that might have been contemplated that it shocks the conscience." The Court then finds that the amount of the liquidated damages provided for in the agreement is "excessive and disproportionate" when compared to the actual loss suffered by the sellers, thus implying that in the absence of a disparity as great as that which exists here (actual loss is approximately one-third of the penalty), the standard of *Warner v. Rasmussen* will not be satisfied.

I think an examination of our cases should suggest to any thoughtful reader that, in application, the test stated in *Warner* is not nearly as accepting of liquidated damage provisions as the quoted language would suggest. In fact, I believe this Court routinely applies the alternative test of *Warner*—that the liquidated damages must bear some reasonable relationship to the actual damages—and that we carefully scrutinize liquidated damage awards. I think it necessary to say this lest the bar be misled by the rather loose language of *Warner* and its predecessors.