Keith C. **HOLT** and Joyce S. Holt,
Plaintiffs and Appellants,

v.

Manuel **KATSANEVAS**, Defendant and Appellee.

No. 920225–CA.

Court of Appeals of Utah.

May 19, 1993.

Earl D. Tanner, Jr., Salt Lake City, for plaintiffs and appellants.

Nick J. Colessides, Salt Lake City, for defendant and appellee.

Before GARFF, GREENWOOD and ORME, JJ.

## OPINION

GREENWOOD, Judge:

Plaintiffs, Keith C. and Joyce S. Holt, appeal from an order of summary judgment entered in favor of defendant, Manuel Katsanevas. We reverse the summary judgment because plaintiffs demonstrated the existence of a material factual issue in this case, and remand.

## BACKGROUND

In 1979, plaintiffs, defendant, and defendant's brother, Steven Katsanevas, entered into a uniform real estate contract (the "Contract"), in which plaintiffs agreed to sell and the Katsanevas brothers agreed to buy real property located at 280 West South Temple in Salt Lake City (the "South Temple property") for $275,000. The Contract included a prohibition against prepayments for the first 120 months and further provided that the Katsanevases would not receive title to the property until the purchase price was paid in full. As the first payment was due October 1, 1979, prepayments were prohibited until October 1, 1989.

In late 1982, defendant was approached by Triad Corporation concerning its possible purchase of the South Temple property for approximately $3,000,000. As part of the proposed transaction, Triad would require defendant to convey fee title by warranty deed to the South Temple property. Defendant, therefore, approached plaintiffs about replacing the South Temple property as collateral for the Contract with other property owned by defendant which was located at 118 North 300 West in Salt Lake City (the "North Temple property"). Plaintiffs gave tentative permission for the exchange of collateral.

Because the South Temple property was encumbered by an earlier loan to plaintiffs from Continental Bank and Trust, the Triad purchase also required payoff of that loan in order to clear title. The balance on the Continental Bank loan was approximately $46,000 at that time. After several meetings, the parties orally agreed that defendant could pay off the Continental loan, notwithstanding the Contract's prepayment prohibition, plaintiffs would convey title to the South Temple property to defendant so that defendant could then sell the property to Triad, and defendant would provide substitute collateral for the Contract in the form of an assignment of contract for the North Temple property. According to plaintiffs, it was also agreed that the $46,000 payment to Continental Bank would be applied to the end of the Contract's original term rather than at the time of actual payment to Continental. Defendant, however, asserts that the parties agreed that the $46,000 was to be applied to the Contract at the time of payment.

Defendant paid the balance of the loan due to Continental Bank, title was cleared, and defendant sold the South Temple property to Triad Corporation. The Contract was then secured by the North Temple property via a February 13, 1984 document titled "Assignment of Contract (for Security)" and a Trust Deed bearing the same date. The Assignment of Contract recites that the assignment is given to secure an

indebtedness of approximately $172,000. The Trust Deed indicates that it secures a contract "in the principal sum of" $250,000. Both of these documents were prepared by counsel for defendant and were signed by defendant and his brother but not by plaintiffs.

Also in 1984, a Release was executed by plaintiffs releasing defendant's brother from his obligations under the Contract. The Release states in the recitals that the obligation due the plaintiffs by the defendant is "in the sum of $172,000 (as more particularly described in the Trust Deed and Assignment of Contract)."

Monthly payments, as required by the Contract, continued. Statements reflecting defendant's payments and a principal balance consistent with application of the $46,000 payment at the end of the Contract's original payment term were sent to defendant by the escrow agent. Defendant used the escrow agent's statements for tax purposes.

In late 1989, defendant objected to the escrow agent's statements, claiming that the $46,000 payment should have been applied to the loan balance at the time it was paid to Continental Bank. Plaintiffs filed an action for declaratory relief against defendant, seeking an order determining that the parties agreed to apply the payment at the end of the Contract, and that the Contract's prepayment prohibition remained in effect.

Both plaintiffs and defendant then filed motions for summary judgment. Plaintiffs asserted an agreement to apply the payment at the end of the original contract's payment period, which they supported with the escrow agent's statements reflecting principal and interest balances consistent with application of the payment at the end of the original contract's payment period. Additionally, plaintiffs asserted that in 1986 they had sent defendant a letter reflecting this agreement to apply the $46,000 payment at the end of the original contract term, and defendant had not replied with any objection.

Plaintiffs also relied on an admission in defendant's deposition that he had used the escrow agent statements to prepare tax returns for a number of years. In his deposition, defendant admitted awareness of discussions about different possibilities as to how the payment was to be applied. Plaintiffs contended that the affidavits, depositions, escrow statements, and other documents supported their position that defendant agreed to apply the payment at the end of the original contract's payment period.

Defendant asserted, on the other hand, that two other documents supported his position that the payment should have been applied to the Contract's principal balance at the time it was made. These documents were the assignment of contract for the North Temple property and the document releasing defendant's brother from obligation under the Contract. Because both these documents indicate that the principal balance was approximately $172,000, defendant contends that they establish that the payment was applied to the principal of the loan at the time it was paid. Defendant also relied on two letters—an unsigned letter from plaintiffs to defendant, and a correspondence from defendant's counsel to plaintiffs. Plaintiffs, however, denied ever seeing or sending the first letter, and denied receiving the second.

The trial court granted defendant's motion for summary judgment, concluding that the payment should have been applied to the Contract balance when paid. Plaintiffs then filed a motion for reconsideration, supported by an affidavit by Robert Bailey, a Continental Bank officer, and a second affidavit of plaintiff Keith Holt. According to the two affidavits, Bailey had been working with Keith Holt to obtain an SBA loan for him. The affidavits describe an informal meeting attended by Keith Holt, defendant, defendant's legal counsel and Robert Bailey, in which the proposed Triad transaction was discussed. Keith Holt's affidavit states that during this meeting he and the Katsanevas brothers reached an oral agreement to apply the Continental Bank payment at the end of the original contract's payment period. Robert Bailey's affidavit also acknowl-

edges a discussion regarding paying off the Continental Bank loan in order to allow the Katsanevases to sell their property to Triad. Bailey's affidavit further states:

> Keith [Holt] made three proposals; First, he offered to make the substitution if they would pay his increased income taxes for the year. They declined this plan. Second, he offered to substitute collateral if they would raise the interest rate on the contract. They declined the second offer.
>
> Keith's third plan was to apply the payment to Continental Bank to the end of the contract. They would continue making their regular monthly payments until the principal balance was reduced to the amount of their payment to Continental Bank. At that time, their payment would be credited to the contract which would then be paid in full.
>
> Keith and the Katsanevas brothers agreed to the third plan. I remember them standing and shaking hands on the deal.
>
> Outside the Crown Burger after the meeting, I told Keith that he had come out "smelling like a rose" and that this arrangement would work fine for this SBA loan. We picked up [ ] the commercial officer at Continental Banking working with Keith, and had lunch at Diamond Lil's.

The trial court granted the motion for reconsideration and did not grant defendant's motion to strike these supplemental affidavits. We assume, therefore, that the trial court allowed and considered them. The trial court then affirmed summary judgment in favor of defendant, finding that no agreement existed which would require that the payment be applied at the end of the original Contract's payment period.

In its Memorandum Decision granting summary judgment to defendant, the trial court made findings of fact, including the following:

8. Plaintiffs agreed to reduce the principal sum due under the contract by the sum of $46,386.51.

9. The plaintiffs and defendants executed and delivered to each other various documents including a Release, an Assignment of Contract, and a short form Trust Deed, wherein they recited that the then existing indebtedness was the sum of approximately $172,000.00, which balance assumes that the payment of $46,386.51 was applied to the then balance of the contract, at the time that it was made.

10. It was necessary for defendant Manuel Katsanevas to borrow the $46,386.51 in order to pay off the plaintiffs' loan [from Continental Bank.]

11. The payment of plaintiffs' loan [ ] was not a gift, nor was it intended to plaintiff [sic] to bestow any other financial benefit upon plaintiffs; the payment was made at the request of plaintiffs' Bank, for the benefit of the plaintiffs, and thus plaintiffs' Bank allowed the exchange of the collateral.

12. There is no writing or other agreement requiring defendant to apply the $46,386.51 payment for any purpose other than as having been applied when made. There was no agreement whereby defendant agreed to apply the payment of $46,386.51 to the bottom of the Contract.

The court also entered the following conclusions of law:

1. Plaintiffs are required to apply the $46,386.51 payment to the then balance of the Contract, as of the date the same was made to plaintiffs' Bank, to-wit December 21, 1983.

2. Plaintiffs are not entitled to a windfall.[1]

Plaintiffs appeal, claiming that disagreement over how to treat defendant's $46,000 payment constitutes a material factual is-

---

**1.** We are unclear as to the relevance of this conclusion and finding 11 above. So far as we can determine from the record, plaintiffs did not claim that the Continental Bank payoff by defendant was gratuitous, only that it would be credited to defendant's obligation under the Contract at a future date rather than when actually paid. Further, it wasn't Continental Bank's decision to allow or not allow the exchange of collateral. The Bank simply required payoff of its loan before it would release the collateral securing that loan.

sue. Further, plaintiffs contend that the oral modification of the Contract is enforceable, notwithstanding the statute of frauds, because plaintiffs changed their position in reliance on the oral agreement.

## STANDARD OF REVIEW

■ In considering an appeal of the grant or denial of a summary judgment, we review the facts and all reasonable inferences from them in a light most favorable to the losing party. *Larson v. Overland Thrift & Loan*, 818 P.2d 1316, 1319 (Utah App.1991), *cert. denied*, 832 P.2d 476 (Utah 1992). The legal conclusions reached by the trial court in granting summary judgment are accorded no deference but, instead, are reviewed for correctness. *Id.* *See Pratt v. Mitchell Hollow Irrigation Co.*, 813 P.2d 1169, 1171 (Utah 1991).

## ANALYSIS

This court will affirm a grant of summary judgment only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c); *Krantz v. Holt*, 819 P.2d 352, 353 (Utah 1991); *Larson v. Overland Thrift & Loan*, 818 P.2d 1316, 1319 (Utah App.1991). Therefore, if we conclude that the parties genuinely dispute the terms of their oral agreement and that the dispute is material because plaintiffs could enforce the version of oral agreement they describe, we must reverse the trial court's grant of summary judgment against plaintiffs.

■ The parties do not deny entering into an oral agreement to modify the original Contract in order to enable defendant to sell the South Temple property to Triad. Although no written document integrates the oral agreement in its entirety, dispute arises only over the portion of the oral agreement concerning whether defendant could apply his $46,000 payoff of the preexisting Continental Bank loan against his debt to plaintiffs when he actually paid the money or whether that payment would be applied at the end of the Contract term. After careful review of the record, we are persuaded that the affidavits, depositions, pleadings and documents submitted to the trial court in connection with defendant's motion for summary judgment, demonstrate that this dispute is a genuine factual issue. Documentation referencing modifications of the loan described in the Contract and relevant testimony of witnesses demonstrate disparity and conflict as to the content of the parties' arrangement on this matter. Given that the trial court accepted this conflicting evidence, we conclude that it erred in finding no issue of fact which might impact its ability to grant summary judgment.

Having concluded that the content of the oral modification of the Contract is at issue, we must next determine whether that issue is material and thereby requires us to reverse the trial court's grant of summary judgment. Plaintiffs could establish materiality by proving that its version of the disputed oral agreement could be found enforceable as a matter of law.[2]

■ Defendant argues that even if the parties agreed to the Contract modification terms claimed by plaintiffs, this oral agreement is unenforceable under the statute of frauds, because an agreement concerning the sale of land requires a "writing subscribed by the party by whom the ... sale is to be made." Utah Code Ann. § 25-5-3 (1989).[3] Generally, if an original agreement was required to comply with the statute of frauds, any material modification of that agreement must also conform to the statute of frauds. *Allen v. Kingdon*, 723

---

2. Defendant also argues that plaintiffs are precluded from enforcing the prepayment penalty provision of the Contract because of estoppel and waiver theories. Because we resolve this case on the basis of the statute of frauds, we do not address those additional theories.

3. The relevant provision of Utah Code Ann. § 25-5-3 (1989) states: "Every contract for the leasing for a longer period than one year, or for the sale, of any lands, or any interest in lands, shall be void unless the contract, or some note or memorandum thereof, is in writing subscribed by the party by whom the lease or sale is to be made, or by his lawful agent thereunto authorized in writing."

P.2d 394, 396–97 (Utah 1986). However, in *Allen* the Utah Supreme Court recognized an exception to this general rule, "where a party has changed position by performing an oral modification so that it would be inequitable to permit the other party to found a claim or defense on the original agreement as unmodified." *Id.* at 396 (citations omitted). *See also, Quirin v. Weinberg*, 252 Mont. 386, 830 P.2d 537, 541 (1992); *Crandell v. Resley*, 804 P.2d 272, 275 (Colo.App.1990); *Mikesell v. Newworld Dev. Corp.*, 122 Idaho 868, 840 P.2d 1090, 1095 (App.1992); *Siegner v. Interstate Prod. Credit Assn.*, 109 Or.App. 417, 820 P.2d 20, 30 (1991); *Kirk v. Tomulty*, 66 Wash.App. 231, 831 P.2d 792, 796 (1992). In addition, transactions for the sale of realty may be exempted from the statute of frauds where there is "sufficient performance on the part of [one party] exclusively referable to the alleged contract to exempt it from the effect of the statute of frauds." *Ryan v. Earl*, 618 P.2d 54, 55 (Utah 1980).[4] When an oral contract otherwise prohibited by the statute of frauds becomes enforceable because of part performance or otherwise, "the Statute does not prevent enforcement of the remaining promises." Restatement (Second) of Contracts § 147(2) (1979). *See also In re Madsen's Estate*, 123 Utah 327, 259 P.2d 595 (1953).

Plaintiffs assert that the portion of the oral agreement at issue in this case falls outside the statute of frauds on the basis of part performance. They claim that the agreement regarding application of defendant's payment to Continental Bank was part of a more comprehensive oral modification of the Contract sought by defendant to enable him to take profitable advantage of Triad's offer to purchase the South Temple property. Neither party disputes that this agreement included conveying the South Temple property to defendant free of all encumbrances, accepting the North Temple property as substitute collateral for the Contract, and allowing defendant to pay off the preexisting $46,-000 loan from Continental Bank despite the Contract's prohibition of prepayment. The parties agreed to and performed these terms of their oral agreement. Both parties admit that their oral agreement also contained some arrangement for the application of the $46,000 payment.

Plaintiffs contend that accepting substitute collateral and permitting defendant to pay Continental Bank constituted a change in plaintiffs' position for the benefit of defendant. Plaintiffs claim that they would not have agreed to these modifications in the absence of a further oral arrangement insuring that the application of the $46,000 payment to the amount owed them on the Contract would be delayed until defendant had paid their loan down to that amount. They point out that they were under no obligation to accept any prepayments under the original terms of the Contract. Furthermore, unconditionally accepting and immediately applying payment during the period when prepayments were prohibited would adversely affect them by diminishing the amount of interest to which they were entitled under the original terms of the Contract.

Reviewing the facts and inferences from these facts in a light favorable to the plaintiffs allows us to find that plaintiffs' acceptance of the substituted collateral and grant of permission for defendant to pay off the preexisting Continental Bank loan constitute performance exclusively referable to the oral agreement. This part performance is sufficient, as a matter of law, to exempt the entire oral agreement from the proscriptions of the statute of frauds.

Because the remainder of the agreement as described by plaintiffs would not be unenforceable under the statute of frauds, we conclude that plaintiffs have demonstrated a material factual issue which precludes summary judgment of their case against defendant.[5] The issue of the prop-

---

4. *See also* Utah Code Ann. § 25–5–8: "Nothing in this chapter contained shall be construed to abridge the powers of courts to compel the specific performance of agreements in case of part performance thereof."

5. Defendant also argues on the basis of parol evidence, estoppel and waiver. We do not address these issues in this opinion. *See State v. Carter*, 776 P.2d 886, 888 (Utah 1989) (appellate

er application of the $46,000 must, therefore, be submitted to a factfinder who can weigh the merit and credibility of plaintiffs' arguments against the counter arguments of defendant.

## CONCLUSION

To facilitate defendant's sale of certain real property, the parties orally agreed to several modifications of their original Contract. While the parties created documents associated with parts of this oral agreement, no single document exists which incorporates their entire oral agreement. The parties, however, have fully performed all but one of the terms of the oral modification of the Contract. The dispute remaining as to the parties' agreement on application of a payment made by defendant constitutes a material factual issue. Because part performance removes the entire oral agreement from the statute of frauds, plaintiffs would be entitled to enforce all the remaining terms of the oral agreement if a factfinder, having heard full presentation of evidence, accepted their version of the facts. We, therefore, reverse the summary judgment in favor of defendant and remand this case for further proceedings.

GARFF, J. concurs.

ORME, J., concurs in result.

courts need not address every issue raised by    the parties on appeal).