**WOODHAVEN APARTMENTS,
Plaintiff and Appellee,**

v.

**Bertha WASHINGTON, Defendant
and Appellant.**

**No. 940233–CA.**

Court of Appeals of Utah.

Nov. 30, 1995.

Bruce Plenk and Eric Mittelstadt, Salt Lake City, for Appellant.

1. The lease provision reads in whole:
   26. Should Resident vacate the premises prior to the expiration of the terms, Resident will be held responsible for the term of the lease. In the event that the apartment re-rents prior to the expiration of lease, Resident will be assessed a termination fee equal to one and one-half months['] rent.

James H. Deans, Salt Lake City, for Appellee.

Before ORME, GREENWOOD and WILKINS, JJ.

## OPINION

WILKINS, Judge:

Bertha Washington appeals the lower court's decision to grant Woodhaven Apartments liquidated damages as a part of its judgment against her. We affirm.

## BACKGROUND

Woodhaven brought this action against Washington for damages pursuant to their lease agreement after Washington vacated the apartment six months before the lease term ended. Paragraph 26 of the lease agreement, which appeared immediately above the signature line, provided that if Washington vacated the premises before the lease expired, she would be assessed a "termination fee equal to one and one-half months['] rent" if the apartment was re-let before the lease expired.[1] Because Woodhaven re-let Washington's apartment only fifteen days after she vacated it, Washington appeals the lower court's finding that the liquidated damages fee was enforceable and the court's conclusion that contracting for the fee was not an unconscionable act under the Utah Consumer Sales Practices Act (UCSPA).[2] Washington also argues that Utah law prohibits landlords from receiving liquidated damages awards.

## STANDARD OF REVIEW

We have given deference to the trial court's findings of fact, see *Reliance Ins. Co. v. Utah Dep't of Transp.*, 858 P.2d 1363, 1367 (Utah 1993), but we have reviewed for correctness the trial court's conclusions that the liquidated damages were not unconscio-

2. On appeal, neither party disputes the trial court's determination that the contested lease provision is a liquidated damages clause or that the UCSPA applies. Consequently, we do not address these conclusions.

nable and that landlords may receive liquidated damages for a tenant's breach of a lease. Utah Code Ann. § 13–11–5(2) (1992); *see generally State v. Pena,* 869 P.2d 932, 936 (Utah 1994).

## ANALYSIS

### I.

■ We hold that the liquidated damages clause in Washington's lease with Woodhaven is valid under Utah law. Because it was a reasonable forecast of the harm caused if Washington vacated early, and the harm was difficult for the parties to estimate when the lease agreement was signed, this liquidated damages provision is enforceable. *See Reliance Ins. Co. v. Utah Dep't of Transp.,* 858 P.2d 1363, 1367 (Utah 1993) (adopting Restatement of Contracts § 339 (1932)).

■ A reasonable correlation must exist between the damages Woodhaven actually incurred and those provided for in the contract. *Id.* Any disparity between the damages Woodhaven incurred and those provided for in the liquidated damages provision "must be 'grossly excessive' and must 'shock the conscience' of this court before we declare the liquidated damages void." *Id.* (citing *Allen v. Kingdon,* 723 P.2d 394, 397 (Utah 1986)); *see Young Elec. Sign Co. v. United Standard West, Inc.,* 755 P.2d 162, 164 (Utah 1988) (noting that liquidated damages "are enforceable if the amount of liquidated damages agreed to is not disproportionate to the possible compensatory damages and does not constitute a forfeiture or a penalty"). The trial court found, and we agree, that the liquidated damages provision "does not shock the conscience as being unfair or oppressive."

In addition, the record indicates that Woodhaven incurs extra costs and expenses when a tenant terminates a lease early. For example, Woodhaven must perform additional administrative work such as ensuring that the cleaning and repairs are timely done, advertising for the vacancy, showing the apartment to prospective tenants, evaluating the credit worthiness of prospective tenants, and preparing paperwork for the prospective tenants. As the trial court found, an assessment of one and one-half months' rent is not

out of proportion to the effort and resources required to re-let the apartment. The early termination assessment agreed to by the parties was reasonable in light of the then-anticipated expenses expected to be caused by Washington's possible early termination.

The harm caused by Washington's breach was also difficult to accurately estimate when the parties contracted, so the second part of the legal test to determine the validity of liquidated damages is also met in this case. *See Reliance Ins.,* 858 P.2d at 1368–70. The parties' lease was for one year. Neither Woodhaven nor Washington could know when they entered into the lease agreement what the housing market would be like during the coming year. Particularly, they could not know how long it would take Woodhaven to re-let Washington's apartment if she vacated before the lease ended.

Therefore, since both prongs of the legal test are met, the liquidated damages provision is valid. First, the liquidated damages clause was a reasonable forecast, at the time the lease was entered into, of the damages Woodhaven would incur if Washington terminated her lease early. Second, the harm was difficult for the parties to accurately estimate when the lease agreement was signed.

■ Furthermore, " '[u]nder the basic principles of freedom of contract, a stipulation to liquidated damages for breach of contract is generally enforceable.' " *Allen,* 723 P.2d at 397 (quoting *Warner v. Rasmussen,* 704 P.2d 559, 561 (Utah 1985) (citations omitted)). It is reasonable that Woodhaven, which is comprised of 378 apartments, should be allowed to minimize its accounting costs of re-letting apartments that have been vacated early rather than requiring it to keep exacting accounting records of individualized costs for each breach by a tenant of a lease agreement. Using a liquidation clause also benefits tenants because they know what cost will be assessed upon early vacancy. If actual costs were the only allowed measure of damages, some tenants would be required to pay more than the liquidated damages assessment if the landlord was unable to re-let the vacated apartment for several months de-

spite significant and potentially expensive efforts to the contrary.

## II.

We also affirm the trial court's legal conclusion that paragraph 26 was not unconscionable despite Washington's argument that she lacked a meaningful choice regarding the liquidated damages clause. "Unconscionable," according to our supreme court, "is a term that defies precise definition. Rather, a court must assess the circumstances of each particular case in light of the twofold purpose of the doctrine, prevention of oppression and of unfair surprise." *Resource Management Co. v. Weston Ranch & Livestock Co.,* 706 P.2d 1028, 1041 (Utah 1985).

■ Washington here claims oppression, rather than unfair surprise as the basis for finding paragraph 26 to be unconscionable. However, it is still the law in Utah that parties may contract at arms length without the intervention of the courts to rescue one side or the other from the result of that bargain. *Id.* at 1040. Parties are permitted to enter into contracts that later appear to be unfair or unreasonable. *Id.* "Although courts will not be parties to enforcing flagrantly unjust agreements, it is not for the courts to assume the paternalistic role of declaring that one who has freely bound himself need not perform because the bargain is not favorable." *Bekins Bar V Ranch v. Huth,* 664 P.2d 455, 459 (Utah 1983).

■ Having considered all the surrounding circumstances in this case, the "trial court did not find this contract to be unconscionable, and there is no basis upon which we can say, as a matter of law, that he erred in his conclusion." *Jacobson v. Swan,* 3 Utah 2d 59, 67, 278 P.2d 294, 300 (1954).

## III.

■ Washington's argument that Utah law prohibits landlords from collecting liquidated damages awards has no merit. The trial court correctly concluded that *Reid v. Mutual of Omaha Insurance Co.,* 776 P.2d 896 (Utah 1989), does not require the itemization of actual damages as the exclusive remedy for a Utah landlord in a breach of lease situation.

## CONCLUSION

The liquidated damages provision of paragraph 26 bore a reasonable relationship to the damage the parties anticipated Woodhaven would incur if Washington terminated her lease early, and the harm was difficult to accurately estimate at the time the lease agreement was signed. In addition, the damages were not unconscionable under the UCSPA, and they are allowed under Utah law. We affirm. Costs and attorney fees are awarded to Woodhaven.

GREENWOOD, J., concurs.

ORME, Presiding Judge (dissenting):

I dissent. In this case, the landlord received, as part of its judgment, the amount of rent that was owed but not paid by the tenant right up to the time the apartment was relet. In addition, the trial court stood ready to award additional actual damages to compensate for property damage caused by the tenant, but found no such damage was proven by the landlord. Also, the lease provides that a portion of the money paid by the tenant in advance is not refundable, but rather is earmarked for redecoration.

If the tenant remains contractually liable for actual rent unpaid up to the time of reletting, for the costs necessary to repair any property damage, and for at least some redecoration, what kind of damage is sought to be covered by over $500 in *additional* liquidated damages? The trial court theorized that a landlord incurs other expenses, like running ads and posting signs to advertise the vacancy, and that time must be spent in showing the unit to prospective tenants and processing applications. However, the landlord's employee testified the real purpose for the provision was to induce the tenant to honor the lease obligations and the landlord's attorney freely referred to it as a provision to "penalize the tenant for not keeping the lease." Significantly, the landlord suffered no demonstrated additional damage in this case.

There are a number of bases upon which courts can invalidate liquidated damages provisions which work such unjust results. One way is if the "party who would avoid a liquidated damages provision" proves "no damages were suffered or that there is no reasonable relationship between compensatory and liquidated damages." *Young Elec. Sign Co. v. United Standard West, Inc.,* 755 P.2d 162, 164 (Utah 1988). *See also Allen v. Kingdon,* 723 P.2d 394, 397 (Utah 1986) (holding $10,800 "excessive and disproportionate" when compared to actual loss of $3746 and refusing to enforce liquidated damages provision); *Young Elec. Sign Co. v. Vetas,* 564 P.2d 758, 760 (Utah 1977) (stating liquidated damages are considered a penalty, and therefore unenforceable, "if the damages thus stipulated are so excessive that they bear no reasonable relationship to the actual damages").

In the instant case, I must concede that the tenant's effort to meet her burden in this respect was somewhat unfocused. Nonetheless, the import of the landlord's testimony, on cross-examination, was that this was a termination fee designed to induce compliance (or in counsel's words, to penalize noncompliance) that was not really designed to correspond to any particular range of probable relet expenditure. Although the landlord's testimony was that it took an average of six days to re-rent an apartment (three days if it was left clean), it was conceded that there was no significant gap in occupancy here and no appreciable effort was expended to find a new tenant. More importantly, there was no gap in the rents received by the landlord, i.e., the landlord's judgment included the amount of all unpaid rents owing but unpaid by the tenant right up to the time of occupancy by the new tenant.

I am not prepared to say that no liquidated damages clause in a residential lease could ever be upheld. The provision in this case, however, simply cannot be enforced where the landlord sustained no demonstrable damage above and beyond the unpaid rent, property damage, and redecoration expense it already is entitled to recover. The sum of $531 is "excessive and disproportionate" [1]

when compared to *no* expense actually incurred, or even if compared to some modest imputed expense attributable to administrative efforts to show a vacant unit, process an application, and fill in a few blanks on a lease form.

At least on the facts of this case, the $531 "fee" is exactly what the landlord's counsel called it—a penalty. Accordingly, I would amend the judgment appealed from to delete the penalty and leave the landlord to recover only its actual damages.

---

1. *Allen v. Kingdon,* 723 P.2d 394, 397 (Utah 1986).