**WOODHAVEN APARTMENTS,**
**Plaintiff and Respondent,**

v.

**Bertha WASHINGTON, Defendant**
**and Petitioner.**

No. 960002.

Supreme Court of Utah.

July 22, 1997.

James H. Deans, Salt Lake City, for plaintiff.

Bruce M. Plenk, Eric Mittelstadt, Salt Lake City, for defendant.

RUSSON, Justice:

Woodhaven Apartments brought this action against Bertha Washington for actual and liquidated damages pursuant to their lease agreement after Washington vacated the apartment prior to the expiration of the lease. Washington appealed the trial court's decision enforcing the liquidated damages provision. The court of appeals affirmed, and we granted certiorari to review the decision of the court of appeals. *Woodhaven Apartments v. Washington*, 907 P.2d 271 (Ct. App.1995), *cert. granted*, 920 P.2d 1194 (Utah 1996). We reverse.

## BACKGROUND

Woodhaven Apartments and Bertha Washington entered into an agreement for the lease of an apartment from May 30, 1991, to May 14, 1992. The lease required Washington to pay monthly rent in the amount of $354, a nonrefundable "redecorating fee" of $25, and a refundable "security and damage deposit" of $354. In addition, clause 26 of the lease provided that in the event Washington vacated the apartment prior to the end of the lease, she would be responsible for the rent for the balance of the lease, and if it were rerented early, she would be subject to a "termination fee" of one and one-half months' rent. Specifically, clause 26 stated:

> Should Resident vacate the premises prior to the expiration of the terms, Resident will be held responsible for the term of the lease. *In the event that the apartment rerents prior to the expiration of the lease, Resident will be assessed a termination fee equal to one and one-half months [sic] rent.*

(Emphasis added.)

On October 31, 1991, Washington prematurely vacated the apartment. On November 15, 1991, Woodhaven rerented the apartment. Subsequently, Woodhaven filed this action against Washington, claiming $705 due and owing under the lease. This amount included $190.80 for sixteen days' rent from the date of Washington's last payment until the

apartment was rerented, $337.50 for damages allegedly caused to the apartment, and a $531 "termination fee" of one and one-half months' rent, pursuant to paragraph 26 of the lease, less Washington's deposit of $354.

Washington admitted that she owed rent from the time she vacated the apartment until the apartment was rerented but denied the damage charges as alleged. Further, she denied that Woodhaven was entitled to liquidated damages inasmuch as the liquidated damages clause, labeled a "termination fee," was unenforceable under Utah law and unconscionable pursuant to the Utah Consumer Sales Practices Act (UCSPA).

The trial court denied Woodhaven's claim for damages to the apartment for insufficient evidence. However, the trial court did find that Woodhaven was entitled to unpaid rent from the date the apartment was vacated to the date it was rerented in the amount of $354 as well as liquidated damages pursuant to clause 26 of the lease in the amount of $531. Court costs of $24 were also awarded. From this total amount of $909, Washington was given credit for a $329 deposit fee and $200 previously paid by her co-tenant. Judgment was entered against Washington in the amount of $389.[1]

The trial court also concluded that the UCSPA applied to landlord/tenant lease agreements but held that the liquidated damages provision of paragraph 26 was not unconscionable inasmuch as it reflected a replacement for the costs associated with an early lease termination.

The court of appeals, in a split decision, affirmed the trial court. In doing so, it stated that the liquidated damages clause in Washington's lease with Woodhaven was valid and enforceable under Utah law because it was a reasonable forecast of the harm caused if Washington vacated early and because the harm was difficult for the parties to estimate

at the time the lease agreement was signed. *Woodhaven*, 907 P.2d at 273. The court of appeals also affirmed that the liquidated damages provision in question was not unconscionable under common law or the UCSPA. *Id.* at 274. Judge Orme dissented, concluding that the termination fee was an unenforceable penalty and recovery should be limited to actual damages. *Id.* at 275.

On certiorari, Washington argues that the liquidated damages clause is unenforceable and, furthermore, is unconscionable under the Utah Consumer Sales Practices Act.[2]

## STANDARD OF REVIEW

Appellate courts give "deference to the trial court's findings of fact, and we will not set them aside unless we find them to be clearly erroneous." *Reliance Ins. Co. v. Utah Dep't of Transp.*, 858 P.2d 1363, 1366 (Utah 1993). Legal conclusions are reviewed for correctness and afforded no deference. *Id.* Mixed questions of law and fact are reviewed for abuse of discretion in applying the law to the facts. *State v. Pena*, 869 P.2d 932 (Utah 1994).

## ANALYSIS

### A. Liquidated Damages

This court has long had a policy against the imposition of liquidated damages that constitute a penalty for breach of a contractual agreement. In *Perkins v. Spencer*, 121 Utah 468, 243 P.2d 446 (1952), we stated:

> It will be observed that in all cases where the stipulation for liquidated damages was enforced it bore some reasonable relation to the actual damages which could reasonably be anticipated at the time the contract was made and was not a forfeiture which would allow an unconscionable and exorbitant recovery.
>
> . . . .

---

**1.** We note two errors in the trial court's computation of damages. First, the amount of unpaid rent claimed by Woodhaven is $190.80 for 16 days. The trial court erroneously included a full month of rent due. Second, the court also erred in subtracting $200 and $329 from the subtotal of $909 which equals $380, not $389. From those figures alone, judgment should have been entered against Washington in the amount of

$216.80. However, this amount does not reflect our holding here and should be altered accordingly.

**2.** Woodhaven Apartments did not submit a brief. Accordingly, this case is submitted on Washington's brief only.

On the contrary, where enforcement of the forfeiture provision would allow an unconscionable and exorbitant recovery, bearing no reasonable relationship to the actual damages suffered, we have uniformly held it to be unenforceable.

*Id.* at 449–50.

More recently, in *Reid v. Mutual of Omaha Insurance Co.,* 776 P.2d 896 (Utah 1989), in adopting the rule that a landlord is required to take steps to mitigate its loss after a tenant breaches a lease, we reasoned:

[This rule] is more in keeping with the current policy disfavoring contractual penalties. Damages recoverable under a liquidated damages provision in a contract will generally be limited to an amount that represents a reasonable estimation, at the time the contract was drafted, of what would be necessary to compensate the non-breaching party for losses caused by the breach. This policy is based on the view that any liquidated damages provision not so limited results in the imposition of a penalty on the breaching party that is not permitted.

*Id.* at 905.

In *Allen v. Kingdon,* 723 P.2d 394 (Utah 1986), we considered the enforceability of a liquidated damages provision contained in an earnest money agreement which "provided that the sellers could retain all amounts paid by the buyers as liquidated ... damages in the event the buyers failed to complete the purchase." 723 P.2d at 397. We stated:

"Under the basic principles of freedom of contract, a stipulation to liquidated damages for breach of contract is generally enforceable. Where, however, the amount of liquidated damages bears no reasonable relationship to the actual damage or is so grossly excessive as to be entirely disproportionate to any possible loss that might have been contemplated that it shocks the conscience, the stipulation will not be enforced."

*Id.* (quoting *Warner v. Rasmussen,* 704 P.2d 559, 561 (Utah 1985)).

■ "In determining the validity of a liquidated damages provision, this court has adopted section 339 of the Restatement of Contracts." *Reliance Ins. Co.,* 858 P.2d at 1366. Section 339 states in pertinent part:

(1) [A]n agreement, made in advance of breach fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for breach, unless

(a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and

(b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation.

A liquidated damages provision must meet both prongs of this test to be enforceable.

For a liquidated damages provision to satisfy the first part of the Restatement test, "the amount so fixed [must be] a reasonable forecast of just compensation for the harm that is caused by the breach." *Reliance Ins. Co.,* 858 P.2d at 1366. "The issue of whether liquidated damages are a reasonable forecast of actual damages is one of fact." *Id.* at 1367.

■ The liquidated damages provision in question, entitled "termination fee," was set at "one and one half months [sic] rent." In the case of Washington, this amounted to $531. This amount was obviously meant to cover those costs incurred in rerenting the apartment prior to expiration of the lease in addition to lost rent and cleaning costs, which are provided for elsewhere in the lease. The lease provides that an early departing renter must pay the balance of the lease unless the apartment is relet, in which case the renter is responsible only for the days the apartment remains vacant. Woodhaven sued for the sixteen days the apartment was empty. Washington does not dispute her obligation in this regard. As for cleaning, the lease required Washington to pay a nonrefundable redecorating fee. She likewise has no dispute with this fee. What she does dispute is the termination fee, which covers the administrative costs of reletting the apartment.[3]

**3.** If the termination fee covers items already covered by the lease, enforcing it would amount to

In applying the Restatement test, the first prong requires a determination of whether this liquidated damages fee was a reasonable forecast of the administrative costs of reletting the apartment after early termination of the lease. More specifically, the issue is whether, at the time the lease was executed, $531 was a reasonable forecast of the costs of early termination of the lease.

Upon receipt of the evidence, the trial court concluded that Woodhaven was entitled to liquidated damages, stating:

> Plaintiff, whenever there is an early termination of a lease agreement, incurs costs over and above those normally associated with providing residential housing. Plaintiff reasonably could anticipate incurring those costs only when the lease terminates at the expiration of the lease term. Plaintiff is required to clean premises, perform whatever minor repairs are necessary to make the unit attractive to a prospective tenant, perform the necessary administrative details to ensure that the work is properly and timely done, advertise for the vacancy, have personnel available to show the apartment to prospective tenants, prepare the necessary paperwork for the prospective tenant, perform various checks of prospective tenants, etc. All of these duties draw upon the resources of the plaintiff. Incurring these costs sooner than anticipated when the lease is terminated early results in added costs and expenses for a landlord.

And the court of appeals in affirming the trial court stated:

> In addition, the record indicates that Woodhaven incurs extra costs and expenses when a tenant terminates a lease early. For example, Woodhaven must perform additional administrative work such as ensuring that the cleaning and repairs are timely done, advertising for the vacancy, showing the apartment to prospective tenants, and preparing paperwork for the prospective tenants. As the trial court found, an assessment of one and one half month's rent is not out of proportion to the effort and resources required to re-let the apartment. The early termination assessment agreed to by the parties was reasonable in light of the then-anticipated expenses expected to be caused by Washington's possible early termination.

*Woodhaven*, 907 P.2d at 273.

However, a review of the record indicates insufficient evidence to support such findings. Nowhere in the record is there evidence of time and costs generally required in reletting an apartment early except testimony of the manager to the effect that a vacated apartment is normally ready for rerenting in three to six days. There is no evidence at all to support findings as to what is required or the costs of advertising, showing the apartment, arranging for cleaning, preparing necessary paperwork, or performing various checks of prospective tenants. The cleaning costs were covered by the nonrefundable redecorating fee, not by the liquidated damages clause. As for repairs, the trial court denied the same for lack of evidence.

To determine if the liquidated damages clause amount has a reasonable relationship to the fee, there must at least be some evidence of the costs anticipated when the lease was executed. There was insufficient evidence as to time and costs reasonably to be anticipated in an early departure, as well as to the relationship of these expenses to the termination fee. Therefore, it is impossible to determine the reasonableness of the fee.

The only evidence at trial of the anticipated costs was the testimony of the manager, Mrs. Allen, who testified that it takes time to put the apartment "back on the market, to rent it and to get it ready," but she further testified that when a tenant moves out in the middle of a lease, all that is required in turning over an apartment is to get the cleaning done and that it is usually ready to be rerented in "5 to 6 working days" and "if it's left clean, normally 3 working days."

Furthermore, it should be noted that these are costs that Woodhaven would have incurred when Washington eventually vacated if she had fulfilled the lease. As the trial court noted, the only added cost to plaintiff

---

double collection which would be a strong indication of its punitive nature. To the extent that

this termination fee covers damage elements that are already covered, it is unenforceable.

caused by Washington's breach is the loss of the use of that money (i.e., administrative costs of reletting the apartment) for the balance of the lease. Even Woodhaven's attorney refers to the termination fee as a penalty.

We conclude that there was insufficient evidence to support the trial court's finding that the amount fixed in this lease for liquidated damages was based upon a reasonable forecast of the harm caused by breach of the lease. Accordingly, we hold that the lower court's finding that the liquidated damages clause was reasonable is clearly erroneous and the court of appeals erred in affirming it. Indeed, the evidence shows that the liquidated damages provision as applied to Washington constituted a penalty.

Inasmuch as the provision in question does not meet the "reasonable forecast" prong of the test set forth in *Reliance Insurance Co.*, 858 P.2d at 1366, it is not enforceable; therefore, there is no need to discuss the second prong of the test.

*The Utah Consumer Sales Practices Act*

In response to Woodhaven's complaint to enforce the termination fee, Washington counterclaimed that Woodhaven violated the UCSPA, Utah Code Ann. § 13–11–1 through –23, and therefore, she was entitled to damages as provided by that act. The act provides for consumer actions against suppliers who commit deceptive or unconscionable acts as defined and provides relief in the form of court costs and damages.

Whether this act applies to a residential lease is unclear in our earlier decisions. In *Wade v. Jobe*, 818 P.2d 1006, 1015, 1018 (Utah 1991), Justice Durham and Justice Zimmerman stated that the Utah consumer protection statute should apply to residential leases, while the remaining three justices expressed no opinion in that respect. In a subsequent case, *Carlie v. Morgan*, 922 P.2d 1, 6 (Utah 1996), this court held that the UCSPA did not apply because the habitability of the premises was at issue and that a more specific statute, the Utah Fit Premises Act, applied in its stead. In other words, the more general law, the UCSPA, was preempted by the more specific law.

However, the case before us involves the contractual relationship between the lessee and the lessor, not the fitness or habitability of the apartment. Therefore, the Utah Fit Premises Act has no application and does not preempt the UCSPA. We have not discovered, nor have the parties brought to our attention, any other specific laws that apply to landlord/tenant transactions that would preempt the UCSPA. Therefore, we now address whether the UCSPA does, indeed, apply to landlord/tenant transactions such as the one before us.

The UCSPA provides that a supplier who commits an unconscionable act "in connection with a consumer transaction" is liable according to Utah Code Ann. § 13–11–5(1). The statute defines consumer transaction as follows:

(2) "Consumer Transaction" means a sale [or] *lease*, . . . of goods, services or other *property*, both tangible and intangible (except securities and insurance), to a person for primarily personal, family or household purposes. . . .

Utah Code Ann. § 13–11–3(2) (emphasis added).

When construing a statute, we first look to its plain language. *K & T, Inc. v. Koroulis*, 888 P.2d 623, 627 (Utah 1994). We assume each term was "used advisedly; thus the statutory words are read literally, unless such a reading is unreasonably confused or inoperable." *Savage Indus., Inc. v. State Tax Comm'n*, 811 P.2d 664, 670 (Utah 1991) (footnote omitted). We look beyond the statutory language only when there is ambiguity. *Schurtz v. BMW of N. Am., Inc.*, 814 P.2d 1108, 1112 (Utah 1991).

The statute in question is plain and unambiguous. "Consumer transaction" includes a "lease" of "tangible property" to persons "for personal or household purposes." Utah Code Ann. § 13–11–3(2). Clearly, the UCSPA applies to leases of residential property. Washington's lease of the apartment is undeniably a lease of tangible property for personal or household purposes.

We are inclined to add that the statute is justified inasmuch as today's landlord/tenant

relationships are akin to commercial contracts. As stated in *Wade*, the contemporary view of landlord/tenant relations and the public policy behind the consumer protection laws support the application of the UCSPA to residential leasing since "the tenant, much like a buyer of a used car, is a consumer of housing." 818 P.2d at 1015. In other words, a residential tenant is a consumer who needs protection from deceptive and unconscionable acts, as would a used car buyer. We therefore agree with the court of appeals' affirmation of the lower court's ruling that the UCS-PA applies in this case.

### Unconscionability

Having concluded that the UCSPA applies in this case, we must now determine whether Woodhaven's actions were unconscionable and violated the act. Washington claimed that Woodhaven violated the UCSPA in that the liquidated damages clause was disproportionate to the amount of damages actually suffered and constitutes a deceptive or an unconscionable act in violation thereof. The trial court held that there was no such violation, stating:

> The Court hereby finds that the contested provision is not unconscionable. The terms, while not particularly well drafted, are not deceptive or misleading. It is the last substantive provision appearing before the signature. There was no apparent attempt to bury the provision in the body of the lease. While the better practice might have been to place the liquidated damages provision in bold letters, or require that initials be placed in the margin to draw attention to the clause, the lack of these steps does not render the provision unconscionable. There is no complicated formula to be applied. Even a cursory reading would put a tenant on notice that there is a penalty for early termination of the lease. The contract is not an adhesion contract, the tenants were not forced to rent from a complex offering patently offensive terms. In the absence of compelling evidence the court must assume that other rental properties were available in the Salt Lake housing market at the time Defendant chose to lease from Plaintiff.

The court of appeals affirmed the trial court in this regard, stating:

> "Unconscionable," according to our supreme court, "is a term that defies precise definition. Rather, a court must assess the circumstances of each particular case in light of the twofold purpose of the doctrine, prevention of oppression and unfair surprise." *Resource Management Co. v. Weston Ranch and Livestock,* 706 P.2d 1028, 1041 (Utah 1985).
>
> Washington here claims oppression, rather than unfair surprise as the basis for finding paragraph 26 to be unconscionable. However, it is still the law in Utah that parties may contract at arms length without the intervention of the courts to rescue one side or the other from the result of that bargain. *Id.* at 1040. Parties are permitted to enter into contracts that later appear to be unfair or unreasonable. *Id.* "Although courts will not be parties to enforcing flagrantly unjust agreements, it is not for the courts to assume the paternalistic role of declaring that one who has freely bound himself need not perform because the bargain is not favorable." *Bekins Bar V Ranch v. Huth,* 664 P.2d 455, 459 (Utah 1983).
>
> Having considered all the surrounding circumstances in this case, the "trial court did not find this contract to be unconscionable, and there is no basis upon which we can say, as a matter of law, that he erred in his conclusion." *Jacobson v. Swan,* 3 Utah 2d 59, 67, 278 P.2d 294, 300 (1954).

*Woodhaven,* 907 P.2d at 274.

Whether the termination fee was unconscionable is a mixed question of law and fact. A trial court's determination of the law is reviewed for correctness, while its findings of fact are reviewed for clear error. Its application of the law to the facts is reviewed for abuse of any discretion granted the trial court in applying the stated rule of law to the facts of the case. *Pena,* 869 P.2d at 937. *Pena* sets forth a four-part process through which an appellate court determines the appropriate amount of discretion to be granted a lower court's ruling on a mixed question of law and fact. In the case at hand, however, there is insufficient evidence to rule that the

clause was unconscionable under any degree of discretion that a *Pena* analysis might indicate is appropriate. Therefore, a detailed analysis is not necessary.

In *Wade,* we addressed the question of unconscionability in the context of the UCSPA and in doing so relied upon an earlier case, *Resource Management,* 706 P.2d at 1041, wherein the doctrine of unconscionability was discussed at length. In *Resource Management,* we analyzed unconscionability of contract in terms of procedural and substantive unconscionability. *Id.* Procedural unconscionability addresses whether the party had a reasonable opportunity to read and understand the terms of the contract. Washington does not claim procedural unconscionability, nor does she argue unfair surprise. Indeed, the trial court found that "[t]here was no apparent attempt to bury the provision in the body of the lease.... Even a cursory reading would put a tenant on notice that there is a *penalty* for early termination of the lease" (emphasis added).

What Washington does argue is substantive unconscionability. Substantive unconscionability requires more than the mere unenforceability of a contract provision. As we stated in *Resource Management,* it requires a disparity that is so great as to "shock the conscience." *Id.* (citing *Morris v. Sykes,* 624 P.2d 681, 684 (1981)). We also stated that "an unconscionable contract [is] one in which no decent, fair-minded person would view the results without being possessed of a profound sense of injustice." *Id.* (citing *Carlson v. Hamilton,* 8 Utah 2d 272, 275, 332 P.2d 989 (Utah 1958)).

To determine whether the termination fee was unconscionable, a comparison must be made between the actual administrative costs of early termination and the termination fee. Any disparity between the two must shock the conscience or produce a profound sense of injustice before there can be a determination of unconscionability. However, the record reflects no such evidence. While there is evidence that early termination requires additional work and administrative costs, there is no evidence as to the time involved and the extent of those costs.

Without such evidence, a comparison necessary to determine whether such clause was unconscionable cannot be made.

Furthermore, our determination that the contract provision is unenforceable does not necessarily mean that such provision was unconscionable. There must be sufficient evidence to find unconscionability and in this case such is lacking. Accordingly, we affirm the court of appeals in its affirmance of the trial court's conclusion that the termination fee is not unconscionable.

## CONCLUSION

For the foregoing reasons, we reverse the decision of the court of appeals as to the termination fee and remand to the trial court to recalculate damages consistent with this opinion. As to Washington's counterclaim, we affirm the court of appeals as to the applicability of the UCSPA in this case and the lack of a violation of the same by Woodhaven.

ZIMMERMAN, C.J., and HOWE and DURHAM, JJ., concur.

STEWART, Associate C.J., concurs in the result.