writ will not lie where a "plain, speedy and adequate remedy is available." Utah R. Civ. P. 65B(a). We therefore dismiss the Petition for Extraordinary Writ.

.

■

2007 UT App 318

## EXPRESS RECOVERY SERVICES, INC. (a debt collection agency), Plaintiff and Appellant,

v.

## Adam SHEWELL and Jennifer Caldwell–Shewell, Defendants and Appellee.

**No. 20060576–CA.**

Court of Appeals of Utah.

Sept. 27, 2007.

Edwin B. Parry and Samuel S. McHenry, West Valley City, for Appellant.

Adam Shewell, Holladay, Appellee Pro Se.

Before BENCH, P.J., DAVIS and ORME, J.

## MEMORANDUM DECISION

DAVIS, Judge:

■ ¶1 Express Recovery Services, Inc. (Express) appeals the trial court's default judgment, contending that the court erred when it concluded that Express could not recover both attorney fees and a 50% collection commission pursuant to a contractual provision, in addition to interest and the full amount of the debt. Specifically, Express asserts that the trial court erred (1) by "invad[ing] the province of the legislature" when, pursuant to the policy of some local trial judges, the court required Express to file an affidavit setting forth certain facts and details in order to recover both collection costs and attorney fees; (2) by "unilaterally modif[ying] a written contract" into which both parties entered voluntarily; and (3) by not following the policy of the bad check statute and of other jurisdictions allowing recovery of collection costs, attorney fees, and damages.[1] Because Express challenges the trial court's legal determinations and its interpretation of the law, our review is for correctness. *See MacKay v. Hardy*, 973 P.2d 941, 944 (Utah 1998) ("[An appellate court] will review the lower court's ... conclusions of law under a correctness stan-

---

1. This third argument is without merit. The trial court did not err in not relying on title 7, chapter 15 of the Utah Code-which specifically deals with dishonored instruments, or bad checks-when rendering its decision. *See generally* Utah Code Ann. §§ 7-15-1 to -3 (2006 & Supp.2007).

dard."); *Ledfors v. Emery County Sch. Dist.,* 849 P.2d 1162, 1162–63 (Utah 1993) ("We review the trial court's interpretation of law for correctness.").

■ ¶ 2 Rule 55(b)(2) of the Utah Rules of Civil Procedure provides:

> If, in order to enable the court to enter [a default] judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper.

Utah R. Civ. P. 55(b)(2). Thus, each individual trial court has discretion to order parties to submit evidence or other materials necessary for it to reach an appropriate and fair resolution in granting a default judgment. As discussed below, such additional evidence was necessary for the trial court here to determine whether the collection commission sought by Express was reasonable. The trial court had broad authority to require Express to provide an affidavit clarifying certain facts or details regarding the collection commission.[2] *See id.*

¶ 3 We disagree with Express's argument that the trial court erred when it allegedly unilaterally modified the contract that Adam Shewell and his dentists voluntarily entered into, the collection of which was assigned to Express. The trial court properly decided that it could not enforce the collection commission provision for public policy reasons unless the parties presented evidence regarding the reasonableness of the percentage charged. In reaching its conclusion, the trial court reasoned that "[s]eeking a percentage of the princip[al] amount owing as collection costs is akin to seeking liquidated damages," which "must have some reasonable relationship to the actual damages." Furthermore, the trial court stated that "a debtor should not suffer a 'penalty' beyond what is owed plus the legitimate factors of interest, attorney fees and justifiable and justified collec-

tion costs." Finally, the trial court stated that "[collection] costs are not to be part of the attorney fees that are allowed and awarded either under Rule 73 [of the Utah Rules of Civil Procedure] or by Affidavit."

■ ¶ 4 Utah has a " 'policy disfavoring contractual penalties.' " *Woodhaven Apartments v. Washington,* 942 P.2d 918, 921 (Utah 1997) (quoting *Reid v. Mutual of Omaha Ins. Co.,* 776 P.2d 896, 905 (Utah 1989)). We agree with the trial court that a contractual provision seeking a percentage as a collection commission might amount to a penalty for breaching a contract in any given case, particularly when the contract purports to award both the collection commission and attorney fees. In Utah, issues regarding contractual penalties generally have arisen in cases deciding whether liquidated damages provisions should be enforced. The Utah Supreme Court has declared that "parties to a contract may agree to liquidated damages in the case of a breach, and such agreements are enforceable if the amount . . . agreed to is not disproportionate to the possible compensatory damages and does not constitute a forfeiture or a penalty." *Young Elec. Sign Co. v. United Standard W., Inc.,* 755 P.2d 162, 164 (Utah 1988); *see also Woodhaven Apartments,* 942 P.2d at 921 (discussing that liquidated damages provisions are " 'generally enforceable,' " but that they will not be enforced when " 'the amount of liquidated damages bears no reasonable relationship to the actual damage or is so grossly excessive as to be entirely disproportionate to any possible loss that might have been contemplated that it shocks the conscience' " (quoting *Allen v. Kingdon,* 723 P.2d 394, 397 (Utah 1986))).

■ ¶ 5 We conclude that a similar analysis is applicable to collection cost provisions in contracts. Parties may freely and voluntarily enter into contracts requiring upon breach the payment of reasonable collection costs, attorney fees, and damages. If, however, a contract seeks to bind a party to pay both a percentage of the damages as a collec-

---

**2.** We note that Express had an opportunity to submit such an affidavit when it filed a motion to reconsider on January 20, 2006, but did not do so. In that motion, Express referenced the affidavit requirement but argued, in essence, that compliance with the requirement was not necessary in this case.

tion commission in addition to attorney fees, the collection commission (1) must bear a reasonable relationship to the actual cost— not including attorney fees—incurred by the creditor when trying to enforce the contract, and (2) must not be so disproportionate to the actual damages that it is an excessive or exorbitant estimate of collection costs. Otherwise, the collection commission will constitute a contractual penalty and will not be enforceable. *See Woodhaven Apartments,* 942 P.2d at 921; *see also Finkle v. Gulf & W. Mfg. Co.,* 744 F.2d 1015, 1021 (3d Cir.1984) ("[A] provision that calls for payment of a sum on non-performance or on default that is disproportionate to the value of the performance promised or the injury that has actually occurred will be deemed a penalty."); 11 Joseph M. Perillo, *Corbin on Contracts* § 58.11, at 456–57 (rev. ed. 2005) ("If the court believes that, in light of the circumstances existing when the contract was made, the amount agreed upon is 'unconscionable' or is disproportionate to the value of the performance promised and the consideration paid, the sum fixed will be called a penalty and the agreement to pay it will not be enforced.... [T]he justice and equity of enforcement depend also upon the amount of injury that has actually occurred." (footnote omitted)). Furthermore, it is appropriate for courts to evaluate the reasonableness of a collection commission in light of the other fees that the debtor will be required to pay to reimburse the creditor for the costs it incurred.

¶ 6 In this case, the contract provided that Shewell would "pay all costs of collection including a 50% collection agency commission, reasonable attorney fees, and interest at a rate of 21% per annum." Express asserts that the collection commission represents "an actual cost" to the dentists who must pay this commission, but absent the affidavit required by the trial court, no evidence supports this contention. And the trial court was entitled to call for such evidence. *See* Utah R. Civ. P. 55(b)(2). Moreover, even if the commission may have some reasonable relationship to the costs incurred by the creditor in en-

forcing the contract, this alone does not mean that requiring Shewell to pay both a 50% collection commission and attorney fees does not constitute a penalty for his breaching the contract. Attorney fees, generally, are the main part of the overall collection expense incurred by a creditor seeking to collect a debt. We agree with the trial court that collection costs awarded to a creditor cannot duplicate attorney fees accrued by the creditor when attorney fees are awarded separately. Such costs, to the extent reasonable and not duplicative of attorney fees, are basically the cost to file and serve the complaint. Thus, the 50% collection commission might very well have been excessively disproportionate to the actual collection costs incurred. Even though Express argues that the collection commission was not unconscionable or unreasonable, without having filed an affidavit detailing the collection costs incurred, we cannot conduct a meaningful review to determine whether or not the collection commission was indeed a penalty.

¶ 7 Affirmed.

¶ 8 I CONCUR: RUSSELL W. BENCH, Presiding Judge.

ORME, Judge (concurring):

¶ 9 I concur in what is said in the lead opinion, but write separately to address two issues Express raises that the lead opinion essentially ignores,[1] namely that the trial court erred (1) by "invad[ing] the province of the Legislature" when, pursuant to a policy agreed upon by the district court judges at one court location, the court required Express to file an affidavit setting forth certain facts and details in order to recover both collection costs and attorney fees and (2) by not adopting the policy of the bad check statute and of other jurisdictions allowing recovery of collection costs, attorney fees, and damages. This opinion treats them in reverse order.

¶ 10 The trial court did not err in rejecting the applicability of chapter 15, title 7, of the Utah Code—which specifically deals with dishonored instruments, or bad checks—when

---

1. One argument is summarily dispatched in footnote 1 of the lead opinion. The other argument

is simply never mentioned again after it is identified in the first paragraph of that opinion.

rendering its decision. *See generally* Utah Code Ann. §§ 7–15–1 to –3 (2006 & Supp. 2007). First, these sections of the Utah Code clearly do not deal with penalty provisions in contracts. *See id.* Furthermore, while section 7–15–1 does allow recovery of a service charge, collection costs, attorney fees, and treble damages when a party presents a bad check, this section also specifically states that the aggrieved party can only recover a maximum of $20 for collection costs. *See id.* § 7–15–1(4)(b), (6)(a)(ii), (7)(b)(ii). This amount is clearly not excessive; rather, it is definite and reasonable. And even though the statute allows recovery of treble damages, the statute caps the total amount in "damages" that a party can recover at specified amounts, depending on the extent of the delinquency, with the highest damages amount "not to exceed the check amount plus $500." *Id.* § 7–15–1(7)(b)(vi). Thus, while the statute does allow a party to recover a service charge, collection costs, attorney fees, and treble damages, the Legislature took pains to make sure that the collection of these costs would not be excessive or unreasonable in any given case. No such safeguards are in the contractual provision at issue here. Indeed, charging a debtor 50% of the actual debt as a collection cost could quickly become an excessive penalty, well beyond the amount originally owed and the actual costs of collection.

¶ 11 As to the policies of other jurisdictions, Express primarily relies on a case from Arizona. In that case, the plaintiffs actually filed affidavits setting forth the collection costs they incurred and "had to make a prima facie showing that the collection costs they claimed were reasonable" in order for their summary judgment motion to be granted. *Grant Rd. Lumber Co. v. Wystrach*, 140 Ariz. 479, 682 P.2d 1146, 1147–48 (Ct.App. 1984). The Arizona Court of Appeals stated that a collection fee paid on a contingency fee basis "[was] not prima facie reasonable." *Id.* at 1148. Rather, the parties had to present "other evidence such as the reasonable amount for a contingency fee charged [by others] in the community for similar work and the reasonableness of the amount in turn collected from the debtor based upon prevailing practices in the community." *Id.* While that court said that "no other evidence is necessary" if the parties had agreed in advance to a percentage that would be charged, *id.*, I join my colleagues in declining to adopt such a rule. If any such agreed upon percentage is disproportionate to the actual damages and has no reasonable relationship to the collection costs, the amount owed by the debtor would be excessive or exorbitant, contrary to Utah's public policy against contractual penalties. *See Woodhaven Apartments v. Washington*, 942 P.2d 918, 921 (Utah 1997); *Young Elec. Sign Co. v. United Standard W., Inc.*, 755 P.2d 162, 164 (Utah 1988); 11 Joseph M. Perillo, *Corbin on Contracts* § 58.11, at 456–57 (rev. ed.2005). Furthermore, the contractual percentage agreed upon in *Wystrach* was 20%—considerably less than the 50% surcharge at issue here. *See* 682 P.2d at 1148.

¶ 12 The remaining argument, that the trial court "invaded the province of the Legislature" in adopting a policy on collection costs,[2] is also without merit. The Utah Rules of Civil Procedure govern the procedure that attorneys and courts must follow in civil cases. These provisions may be supplemented by the Rules of Judicial Administration, adopted by the Judicial Council and applicable statewide. *See* Utah Code of Jud. Admin., introduction.[3] The affidavit require-

---

**2.** The "Policy on Collection Costs," adopted by the judges of the Third District Court's West Jordan location, provides that for a creditor to recover collection costs

  1. The costs must be specifically provided for by statute or contract;
  2. The costs must be "reasonable";
  3. The costs must be actually incurred by the creditor;
  4. The collection costs sought must be verified by the creditor in a detailed Affidavit setting forth the itemized costs sought to be re-

covered, that such costs were actually incurred and attaching that portion of the contract or statute which provides for recovery of collection costs.

Court personnel sent this policy to "Collection Attorneys and Litigants." This policy was not merely advisory, but was tantamount to a local rule, as shown by the trial court's response when Express refused to file an affidavit as required by the policy.

**3.** While the Rules of Judicial Administration allow courts to adopt supplemental rules, their

ment mandated in the local policy is either a matter of judicial procedure or of judicial administration—most likely the former. As such, it is a matter for the judiciary rather than the Legislature under our constitutional scheme.

¶ 13 By the express terms of the Utah Constitution, the Utah Supreme Court has the authority to "adopt rules of procedure," Utah Const. art. VIII, § 4, while the Judicial Council has the power to "adopt rules for the administration of the courts of the state." Utah Const. art. VIII, § 12(3). Fully consistent with the familiar separation of powers doctrine, there is only a limited role for the Legislature in all of this, and that is the authority to "amend the Rules of Procedure ... adopted by the Supreme Court upon a vote of two-thirds of all members of both houses of the Legislature." Utah Const. art. VIII, § 4.

¶ 14 Basically, then, the local policy requiring an affidavit justifying an award of collection costs would "invade[ ] the province of the Legislature" only if the Legislature, by the requisite super-majority, were to amend the Utah Rules of Civil Procedure to enact a procedure relative to collection costs that was inconsistent with the local policy. Express has not claimed, much less demonstrated, that such is the case. Accordingly, the local policy on collection costs readily withstands the specific challenge advanced by Express.

authority to do so is expressly limited to subject matter "govern[ing] the administration of their courts," Utah R. Jud. Admin. 2–204(1), and does not include the authority to modify procedural requirements. Furthermore, when creating a supplemental local rule, courts must follow a prescribed procedure, which requires not only "approv[al] by the presiding judge after consulta-

tion with the other judges of the court," *id.* 2–204(2), apparently on a district-wide basis, but also approval by the appropriate Board of Judges, *see id.* 2–204(3)–(4), and the Judicial Council, *see id.* 2–204(4)–(5), (7). Express has not argued that the West Jordan judges' policy runs afoul of these requirements.